## W. L. Waters v. The State.

### No. 3871.  Decided June 24, 1908.

**1.—Murder—Constitutional Law—Jury and Jury Law—Jury Wheel.**

The Act of the Thirtieth Legislature p. 269 with reference to the selecting of juries in counties with cities of certain population and providing for the organization of juries by drawing their names from a wheel, etc., is constitutional.

**2.—Same—Charge of Court—Limiting Impeaching Testimony.**

Where upon trial for murder the impeaching testimony of the defense of some of the State's testimony could be used only for the purpose of impeaching and not as original testimony, there was no error in the court's failure in his charge to limit said testimony to purposes of impeachment.

**3.—Same—Evidence—Previous Difficulty.**

Upon trial for murder the State was called upon to prove malice and where the motive for the killing was an issue it was permissible for the State to prove a previous difficulty occurring some half hour before the killing between deceased and defendant.

**4.—Same—Charge of Court.**

Upon trial for murder (the defendant having been previously acquitted of murder in the first degree), where the court charged on murder in the second degree, manslaughter and self-defense, and also at the request of the defendant gave a number of special charges covering different features of the defense, there was no error.

**5.—Charge of Court—Manslaughter—Transport of Passion.**

Upon trial for murder where the charge of the court on manslaughter contained the phrase "a sudden transport of passion," it did not place an unwarranted limitation upon defendant's right to a verdict for manslaughter, and was not reversible error; especially as said charge was not calculated · under article 723 Code Criminal Procedure to injure the rights of defendant. Overruling Kannmacher v. State, 51 Texas Crim. Rep., 118. Approving Neyland v. State, 13 Texas Crim. App., 536; Turner v. State, 16 Texas Crim. App., 378; Bright v. State, 10 Texas Crim. App., 70; and other cases.

**6.—Same.**

A sudden transport of passion is synonymous with that condition where the mind is rendered incapable of cool reflection.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. W. Nelms.

Appeal from a conviction of murder in the second degree; penalty five years imprisonment in the penitentiary.

The following statement of the facts of the case contained in the brief of the Assistant Attorney-General is substantially correct. On the 27th day of January, 1907, two miles west of Lancaster in Dallas County there was a party and dance at the house of Jack Pritchett. At this dance Borden Brandon and his brother, Will Brandon, the deceased, had a difficulty with Buck Walters and his brother, Lee Walters. Some threats were made by the defendant at said dance against the deceased. Shortly after this difficulty the defendant and his brother left the dance and the deceased and his brother also left in buggies that had been secured at McDavid's livery stable in the town of Lancaster. The deceased and his brother being in separate buggies got to the livery stable somewhere between 11 and 12 o'clock at night and in about an hour after they had left the dance. The deceased drove into the livery stable. His brother stopped with his buggy right close to the door on the outside. Here the State's testimony shows that the deceased came rushing out of the stable, jumped into the buggy with his brother and said to him, "drive off quick, Buck is coming with a six-shooter." As his brother was gathering up the lines to drive off the defendant rushed up and said, "Oh, yes, you sons of bitches, your time is up," and fired upon deceased. The deceased then jumped out of the buggy, ran into the livery stable and fell some fifty feet inside of the stable and immediately expired. The deceased was shot in the back, under the left shoulder blade, the ball went through his body and came out on the right side just above the collar bone in the front of his body. The range of the ball being upwards. Just close to the livery stable door and about inside the door blood was found and splotches of blood were found from there to where the body fell. The defendant's contention was that he, together with his brother had gone into the livery stable and had started back to the water trough to wash the blood from his brother's face which had been caused by the result of the

fight at the dance, and that as he stepped out of the office door of the livery stable and started back that the door was thrown open and the deceased said, "Here is the son-of-a-bitch," and that somebody on the outside hallooed, "Shoot him, kill him," and as the deceased jumped out of the buggy with a pistol in his hand the defendant fired, and he claims that the deceased ran right by him on down to the stable and fell. The excuse offered by the defendant for he and his brother being at the livery stable was to have gone there to wash their faces. The defendant, immediately after he returned to the town, went and got a pistol, hitched his team to a rack on the square. The proof further showed on the part of the State that the defendant knew that the deceased had a buggy from this stable and that he would be back with it there that night. Without going into a detail of the facts of the case, suffice it to say, the testimony on the part of the State shows conclusively that the defendant was guilty of murder. Not only the State's testimony but the physical facts surrounding the killing contradict the defendant as to the position and location of the parties at the time the shot was fired.

*Crawford & Lamar*, R. B. *Seay*, and *Muse & Allen*, for appellant.— The statute that relates to persons or things as a class is a general law.

The statute that relates to persons or things of a class is a special law. Art. 3, sec. 56, of the Constitution of Texas; Lewis Sutherland on Statutory Construction, vol. 1, sec. 200; City of Topeka v. Gillett, 4 Pac., 800; Dunne v. Kansas City Cable Railway Co., 32 S. W., 641; State v. Herrman, 75 Mo., 40; State v. Wofford, 25 S. W., 851; State v. County Court, 1 S. W., 307; Smith v. Grayson County, 44 S. W. Rep., 921; Young v. State, 51 Texas Crim. Rep., 363; 102 S. W., 117; Holley v. State, 14 Texas Crim. App., 505; Cordova v. State, 6 Texas Crim. App., 207; Davis v. State, 2 Texas Crim. App., 425; Orr v. Rhine, 45 Texas, 345; Cox et al. v. State, 8 Texas Crim. App., 254, 286-9; Womack v. Womack, 17 Texas, 1; Graves v. State, 8 Texas Crim. App., 234-6.

The case of Dunn v. Kansas City Cable Co., 32 S. W. Rep., 641, a Missouri decision, has been followed in that state in cases reported in B. F. Coombs & Bro. Commission Co. v. Black, 32 S. W. Rep., 1139; 34 S. W. Rep., 72; 478; .855 and 335; S. W. Rep., 774. Gonzales County v. Houston, 81 S. W. Rep., 117; Ellis v. Fort Bend County, 74 S. W. Rep., 43-6; Flewellen v. Fort Bend County, 42 S. W. Rep., 775; Hill County v. Atchison, 49 S. W. Rep., 141; Coombs v. Block, 32 S. W. Rep., 1139; Glover v. Meinrath, 34 S. W. Rep., 72; McMahon v. Pac. Ex., 34 S. W. Rep., 478; Dallas v. Western Elec. Co., 83 Texas, 243.

In the admission of extraneous matters, transactions or crimes the State will not be permitted upon cross-examination of the de-

fendant, or by other witnesses, to prove the details of such crimes, and try them against the defendant. Ware v. State, 36 Texas Crim. Rep., 597, 600; Brittain v. State, 36 Texas Crim. Rep., 406; Morrison v. State, 39 Texas Crim. Rep., 519; 44 S. W. Rep., 511, 512; Wade v. State, 48 Texas Crim. Rep., 512; 90 S. W. Rep., 503; Chumley v. State, 20 Texas Crim. App., 547; Barkman v. State, 41 Texas Crim. Rep., 105; 52 S. W. Rep., 69-71; Woodward v. State, 51 S. W., 1122.

Where testimony is admitted solely for the purpose of impeaching witnesses the court should so instruct the jury, and that they should consider it for no other purpose, and the failure to so instruct is error. Tyler v. State, 13 Texas Crim. App., 205; Branch v. State, 15 Texas Crim. App., 96; Washington v. State, 17 Texas Crim. App., 197; Williams v. State, 25 Texas Crim. App., 76-90; Drake v. State, 25 Texas Crim. App., 293; Thompson v. State, 29 Texas Crim. App., 208; Ferguson v. State, 31 Texas Crim. Rep., 93; Ledbetter v. State, 35 Texas Crim. Rep., 195; Shackelford v. State, 27 S. W. Rep., 8-9; Joy v. State, ·51 S. W. Rep., 935; Winfrey v. State, 41 Texas Crim. Rep., 538; 56 S. W. Rep., 919; Newman v. State, 70 S. W. Rep., 951.

It is error to instruct that the killing must be done in a sudden transport of passion in order to be reduced to manslaughter. Kannmacher v. State, 51 Texas Crim. Rep., 118; 101 S. W. Rep., 238; Clark v. State, 51 Texas Crim. Rep., 519; 102 S. W. Rep., 1136.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter and his punishment assessed at confinement in the penitentiary for five years.

A bill of exceptions was reserved by the appellant to the court's action in overruling his motion to quash the jury panel on the ground that what is commonly known as the Jury Wheel law, passed by the Thirtieth Legislature is unconstitutional. This question was passed on by us adversely to appellants contention in the case of Bob Smith v. State, at the present term of this court.

Appellant further reserved a bill of exceptions to the failure of the court to limit impeaching testimony. The bill presenting the matter shows that the witness Borden Brandon, brother of deceased, was introduced by the State, who testified that deceased, the witness and Edgar Hale were in a buggy at the time the defendant shot and killed the deceased, and he further testified that the iron arm piece on the seat of the buggy was struck by the bullet fired by the defendant, and that a piece of paint was knocked off of the iron arm piece and a lead impression left on the aforesaid rail; that the defendant offered in evidence in impeachment of said witness, his testimony upon the habeas corpus trial in which said witness

had stated nothing in regard to any bullet striking the iron arm rail or any paint being knocked off therefrom or any lead impression left upon the aforesaid iron arm rail; that the State proved by said Borden Brandon, furthermore, that the deceased drove in the buggy into the livery stable door, ran out the same way and got into the buggy with himself and Edgar Hale, and that the defendant came from the side door of the livery stable to the northeast corner and fired the shot that killed the deceased. And that the defendant's theory of the case was that the shooting occurred on the inside of the livery stable, the defendant standing near the corner of the office on the inside of the stable, about fifteen feet from the stable door through which the deceased entered, and at the corner of which office on the inside of the stable was a light and the witness Borden Brandon was asked by appellant's counsel the following predicate of impeachment: "On the night of the killing at McDavid's stable, the place of the homicide, between five and ten minutes after the killing, just after the said Borden Brandon had returned from where his brother's body was lying in the stable, when a man by the name of Harkie was in the office, at the phone phoning, and Dick Warren was standing in the barn near the light that hangs at the corner of the bed room at the office, is it not true that Richard Warren asked you where Buck Waters shot Will Brandon, and didn't Richard Warren at that time and in your presence and while his brother, Joe Warren, was there, ask you where Buck Waters was when he shot Will Brandon, and did you not say that the son-of-a-bitch came out of the door of the bed room and stood right under that light (meaning the light at the corner of the bed room) and held his pistol pointed towards Will Brandon and say you son-of-a-bitch your time is come and shoot Will Brandon?" This statement the witness Brandon denied and thereupon the defendant in impeachment introduced the said Richard Warren who testified that Borden Brandon did, at the time and place aforesaid, make the statement to him appearing in the foregoing predicate. The bill further shows that the State proved by the witness Edgar Hale that he was present at the livery stable on the outside when Will Brandon drove in and that when Will Brandon started to drive into the stable, he heard some one on the inside say the words, "There is them sons of 'bitches;" that in the impeachment of said witness the defendant read in evidence his, said witness', testimony on the habeas corpus trial of said cause, in which said witness had stated, "No, sir, I never heard anything when he started to drive in." And further his former testimony to the effect that all he heard said was when Will Brandon came out of the stable and got in the buggy with his brother Borden and the witness that he said "turn and drive off." Appellant complains by said bill that the court failed to charge upon the effect of the above impeaching testimony. The court approved the bill with this statement: "The testimony set

out, while impeaching testimony was not of a character demanding a charge limiting its effect, and any charge with reference to such testimony would have been a charge upon the weight of the testimony." The rule of this court with reference to charging upon impeaching testimony is, that unless the testimony could be used for some other purpose than impeachment, it is not necessary to charge upon same. We do not think any of the impeaching testimony above copied from the bill could possibly have been used for any other purpose than the impeachment of the witness. If it could, as an independent proposition, be used to show the guilt or innocence of the appellant, the impeachment testimony introduced would tend to exculpate, even if used as independent evidence, but as stated, it could not legitimately be used or originally used by the jury for any other purpose than impeachment; that is, to show the lack of credibility in the witness. This being true, we do not think the court erred in refusing to limit the testimony.

Appellant further complains that the court erred in permitting the State over the objection of appellant, to prove the details of the difficulty that occurred between deceased and appellant at a dance some half hour before the killing. Appellant insists that the details of this former difficulty were inadmissible on the ground that it was a detailed statement of a collateral and extraneous crime, hurtful to appellant, irrelevant and incompetent. Appellant cites the court to various authorities on this question, but none of them are in point, as we understand. On a charge of murder where the State is called upon to prove malice and where the motive for the killing is an issue, it is always permissible to prove the previous difficulties between the same parties, as to who were the aggressors, as shedding light upon the transaction. The evidence in this case shows that deceased and his brother and appellant and his brother had a difficulty at a dance something like a half hour before deceased was killed in which appellant and his brother got the worse of the difficulty, appellant's brother being pretty badly beaten up. Appellant and his brother insist that after the difficulty they went to McDavid's livery stable in the town of Lancaster to wash the blood off of his, appellant's, brother's face and while there deceased and his brother came up and the deceased drove his buggy into the livery stable and just as he did so, some one hallooed, "here are the sons of bitches, now! shoot them! shoot them!" and immediately deceased started to get out of the buggy and appellant shot, hitting deceased; that deceased jumped out of the buggy, ran to the back part of the livery stable and died in a few moments. The State's theory about the immediate facts is, that deceased, after driving his buggy into the livery stable, discovered appellant and rushed out, jumped into the buggy with his brother and Edgar Hale, imploring his brother, Borden Brandon, to drive off, that appellant was coming. At this juncture, the

State's evidence shows, appellant hallooed, "Oh, yes, you sons of bitches, your time is up," and shot, hitting the deceased in the back under the left shoulder, and thereupon deceased jumped out of the buggy, ran into the livery stable and died in a few moments. The defense's testimony shows self-defense. The State's evidence shows a clear case of murder in the second degree. Now then, it was legitimate and proper to show the motive and animus that prompted the appellant in going to the livery stable. The State's evidence shows that he, appellant, knew that deceased would soon be there. Appellant went off and armed himself, and went to the livery stable, as stated in his testimony, to wash his brother's face, being accompanied by his brother. Now then, if the evidence shows that appellant had been very badly mistreated, or beaten by deceased and his brother, this would furnish a powerful motive and animus to appellant to take revenge on deceased. On the other hand if he had been but slightly injured, this would merely go to the extent of the motive and animus. See Kunde v. State, 22 Texas Crim. App., 65. In the case of Davidson v. State, 22 Texas Crim. App., 372, the court holds that such testimony being offered as proof of the main issue involved in the trial no restriction or limitation could apply to it, nor was the court called upon to limit same in its charge to the jury, and it is always competent for the State to prove acts of the accused antecedent to the act of the killing which either in themselves, or in connection with other circumstances tend to prove motive. See also Hubby v. State, 8 Texas Crim. App., 597; George v. State, 17 Texas Crim. App., 513; White v. State, 32 Texas Crim. Rep., 625. This court has furthermore held that indictments and records in other cases where defendant was accused of assault with the intent to murder the deceased, or of theft of property of the deceased, or of other offenses against the deceased, were properly admitted as evidence of motive. Hart v. State, 15 Texas Crim. App., 202. In Easterwood v. State, 34 Texas Crim. Rep., 400, it was held that the testimony of deceased taken at the examining trial before his death, for an assault by defendant with intent to murder him, which showed that deceased was a witness in a cattle stealing case against the brother-in-law of defendant was admissible to show motive. The court charged on murder in the second degree, manslaughter and self-defense, and also at the request of the appellant gave quite a number of special charges covering different features of the defense set up by the defendant. Certainly in the light of this record, the charge of the court in connection with appellant's special charges, can not be criticised, but on the other hand, we think same covers every legitimate phase of the testimony in this case and we hold that the verdict of the jury is amply supported by the evidence.

Finding no error in the record, the judgment is in all things affirmed.                                         *Affirmed.*

ON REHEARING.

December 14, 1908.

BROOKS, JUDGE.—This case was affirmed at a previous term of this court, and now comes before us on motion for rehearing.

Most of the questions raised by appellant are matters that were passed upon by us in the former opinion of this case. After a careful review of the record, we do not deem it necessary to review any of the insistences of appellant save and except the following:

Appellant calls the attention of the court to the fact that the former opinion stated that appellant was convicted of manslaughter. Re-examination of the record shows that in this statement we were in error. The former conviction was for the offense of murder in the second degree, as appellant insists, with a punishment of five years.

Appellant further insists the court erred in holding that the trial court committed no error in its charge upon manslaughter, and in failing to affirmatively present the issues raised by the evidence, and especially in holding that the following charge on manslaughter was not erroneous: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon, in a sudden transport of passion aroused by adequate cause, as the same is herein explained, and not in defense of himself against an unlawful attack reasonably producing a rational fear of death or serious bodily injury, did shoot with a pistol and thereby kill Will Brandon, the deceased, as charged in the indictment; you will find the defendant guilty of manslaughter, and assess his punishment for any term not less than two nor more than five years." Appellant insists that this charge, by the use of the word "transport" interpolated between the words "sudden passion" imposes a test of manslaughter more onerous than the statute and a degree of passion greater than required by law. Fury and frenzy of passion is made the criterion for manslaughter in lieu of the sudden passion as defined by the statute. To support appellant's contention he cites us to the case of Kannmacher v. State, 51 Texas Crim. Rep., 118. This decision supports appellant's contention. It is there held that the charge on manslaughter, like the one under consideration, was error, and the following statement in that connection appears in the Kannmacher opinion: "The court requires the intent to kill to be formed in 'a sudden transport of passion' on adequate cause. This is not the law, but if the mind is excited and not capable of cool reflection from some adequate cause, it is none the less manslaughter, notwithstanding the passion may not be a transport of passion. This character of vice often occurs in charges, no doubt superinduced by the fact that the printed charges used by the judges contain this error, and we have had occasion more than once to reverse cases on this account, and we again call attention to the incorrectness of this character of charge, and in any case

where it is given and calculated to work injury, it will operate a reversal. In this particular case, we can not say that it did not operate to the prejudice of the appellant, he was convicted of murder in the first degree, and in applying the law to the facts, the jury were instructed that they were only authorized to convict appellant of murder in the second degree if the intent to kill was formed in a 'sudden transport of passion.' It may be that appellant's mind was excited by passion and the jury might have believed under a proper charge that it was so influenced, while at the same time they might not have believed that he was laboring under a sudden transport of passion. This was placing on appellant a greater burden than the law authorizes." In deference to this decision and appellant's strong argument in this case, we have anew reviewed all the authorities on this question in the light of the argument and decision last quoted, and must say that neither the decision nor appellant's position is correct; that is to say, the use of the term "transport of passion" did not nor could it have injured appellant. The printed charge, as stated in the opinion, uses the phrase, and probably has caused many other courts to adopt same, but we hold it was not error. The charges are in strict consonance and accord with the decisions of this court that have long since become precedents approved by this court. In the case of Kemp v. State, 13 Texas Crim. App., 561, we have a case wherein Judge T. L. Nugent, one of the most illustrious judges and jurists that has ever adorned the bench of Texas, wrote an admirable charge embodying nearly all of the phases of homicide, and on page 562 of said volume, in applying the law of manslaughter, he uses the following language: "To apply the foregoing principles of law to this case, if Dan Bogan and F. A. Smith became engaged in a personal difficulty or combat, however brought about, and Smith, by reason of superior physical strength on his part, or of drunkenness on the part of Bogan, or by any other means, obtained greatly the advantage of Bogan in such difficulty, and if the defendant was Bogan's friend or companion, and in a transport of passion or excitement engendered by the difficulty and its attending circumstances, joined in and made himself a party to the difficulty, and during its further progress, while his mind by reason of such passion or excitement was incapable of cool reflection, shot and killed Smith; or if, prompted by a sudden impulse of friendship for Bogan, or of resentment at injuries inflicted or about to be inflicted on him, the defendant made himself a party to such difficulty under circumstances showing neither deliberation nor reflection, and afterwards, during the further progress of such difficulty, at a time when from mental agitation or excitement he was incapable of comprehending and contemplating the consequences of his acts, shot and killed Smith; or if the defendant entered into such difficulty under the immediate influence of any other sudden,

rash, inconsiderate impulse, passion or excitement, and, during the further progress of the difficulty, before his feelings had time to cool, shot and killed Smith; in either case from such killing the law will imply malice, if the same was neither manslaughter, nor justifiable homicide as explained in succeeding instructions; and if you believe from the evidence that the defendant did, in Hamilton County, and State of Texas, on or about the second day of May, A. D. 1881, unlawfully shoot and kill the said Smith, under circumstances from which the law will imply malice as above explained, and should further believe from the evidence that such killing was neither manslaughter nor justifiable homicide as defined and explained in succeeding instructions, you will find him guilty of murder of the second degree, and assess his punishment at confinement in the penitentiary for any period not less than five years." This was a charge on murder in the second degree, it is true, and not a charge on manslaughter, but Judge Willson, in delivering the opinion of the court, expressly approved the charge on murder in the second degree, in the following language: "We are unable to perceive any material error in the very able and lucid charge of the court. In our opinion it is a comprehensive, correct and plain exposition of the law applicable to every phase of the case as made by the evidence. It is substantially the same charge which was before this court on the former appeal in this case, and which, after a careful investigation, was pronounced by this court unobjectionable." If it was not error for a charge to contain the phrase "sudden transport of passion" in a charge on murder in the second degree, certainly it could not be error to incorporate such a clause in a charge on manslaughter. As late as the case of McLin v. State, 48 Texas Crim. Rep., 549, a charge in almost the exact words on murder in the second degree was approved by this court. The usual charge, in reference to manslaughter, says that if appellant killed the deceased while laboring under anger, rage, sudden resentment or terror which renders his mind incapable of cool reflection, etc., he would be guilty of manslaughter. We hold that a sudden transport of passion is synonymous with that condition where the mind is rendered incapable of cool reflection. If a party's mind by anger, rage, sudden resentment or terror is rendered incapable of cool reflection, then it is in a transport of passion. The word "transport" merely means, in the connection here used, to carry beyond; he is transported beyond the realm of reason; he is incapable of cool reflection. To say a man is transported beyond reason is certainly synonymous to saying his mind is incapable of reason, and if passion transports him beyond reason, then he is incapable of cool reflection. If he is incapable of cool reflection, then clearly he is transported by passion. In other words, the Kannmacher case is erroneous in holding that it puts an unwarranted limitation upon the mental condition necessary to reduce the killing to manslaughter.

The rule on murder is thus stated in the case of McCoy v. State, 25 Texas, 33: In defining the proof necessary to constitute express malice, the following are necessary requisites: (1) The slayer must be of sedate, deliberate mind. He must be sufficiently self-possessed as to comprehend and contemplate the consequences of his acts. His acts must not be the result of a sudden, rash, inconsiderate impulse or passion. (2) The design formed must be to kill the deceased, or inflict some serious bodily harm upon him. This would indicate that the malevolence must be directed towards the deceased as its object. (3) Malice of all kinds must be inferred, because it consists in a quality or state of the mind, either actual or imputed. Its actual existence may be manifested by external circumstances, from which it may be reasonably inferred. The evidence of such malice must arise from external circumstances, as lying in wait, menacings, former grudges, deliberate compassings, and the like, which are various, according to variety of circumstances. These external circumstances indicating the design, may transpire at the time of the killing, as well as before that time. However sudden the killing may be, if the means used or manner of doing it, or other external circumstances attending it, indicate a sedate mind and formed design to kill, or do great bodily injury, it will be upon express malice. Therefore, if the killing takes place suddenly, if the means used and the manner of doing it and other external circumstances indicate a sedate mind and formed design to kill, it is murder, and all murder not of the first degree is murder of the second degree. Judge Willson, delivering the opinion of the court in the case of Turner v. State, 16 Texas Crim. App., 378, uses the following language: "In Harris v. State, 8 Texas Crim. App., 90, implied malice is thus explained: 'When the fact of unlawful killing is established and there are no circumstances in evidence which may tend to establish the existence of express malice, nor which may tend to mitigate, excuse or justify the act; then the law implies malice, and the offense is murder in the second degree.' This definition has been repeatedly approved by subsequent decisions of this court."

Now, reverting to appellant's question, we have presented to us the proposition as to whether or not a charge on manslaughter which contains the phrase complained of, to wit: a sudden transport of passion, puts an unwarranted limitation upon his right to a manslaughter verdict. We say no. So we hold that the charge of the court on manslaughter is not erroneous, but correct, and certainly was not calculated under article 723 of the Code of Criminal Procedure of this State to injure the rights of appellant. This last proposition is beyond cavil. We think the first is also; that is, the charge is accurate as an original proposition, and then if not, that it was not calculated to injure the rights of appellant. The charge complained of on murder in the second degree has been

approved by this court repeatedly. See Neyland v. State, 13 Texas Crim. App., 536; Turner v. State, 16 Texas Crim. App., 378; Bright v. State, 10 Texas Crim. App., 70, wherein this court approved a charge of the present Chief Justice of the Supreme Court, Judge R. R. Gaines. See also Kemp v. State, supra, and other authorities too numerous to mention.

We accordingly hold that appellant's motion for rehearing should be overruled, and it is so ordered.

*Overruled.*