WILL PURYEAR V. THE STATE.

No. 4049. Decided April 28, 1909.

Rehearing Denied May 19, 1909.

**1.—Murder—Charge of Court—Murder in the Second Degree.**

Upon trial of murder there was no error in the court's charge on murder in the second degree to the effect that if defendant killed the deceased in a sudden transport of passion aroused without adequate cause, etc., they should convict defendant of murder in the second degree. Following Waters v. State, 54 Texas Crim. Rep., 322. Overruling Clark v. State, 51 Texas Crim. Rep., 519; Kannmacher v. State, 51 Texas Crim. Rep., 118.

**2.—Same—Charge of Court—Murder in the Second Degree.**

Where upon trial for murder the objections to the court's charge, with reference to implied malice and unlawful killing as applied to the evidence on the issue of murder in the second degree, when considered in the light of the entire charge were untenable, there was no error, and the mere omission in a particular paragraph of the charge to require the killing to be unlawful or upon implied malice would not be reversible error. Following Brittain v. State, 36 Texas Crim. Rep., 406, and other cases.

**3.—Same—Charge of Court—Accomplice.**

Where upon trial for murder the evidence showed such relation of the witness and the defendant to the facts preceding the killing and leading up to the homicide as might have well justified the jury in believing that he was aiding and encouraging defendant in the assault upon deceased, and on cross-examination by the State certain statements were attributed to the witness which placed him in the light of an accomplice, the court correctly charged on accomplice testimony, in the meantime instructing the jury that the question of corroboration had no application to testimony of an accomplice which is exculpatory,

and that the jury were under no duty to require the corroboration of such exculpatory testimony and could allow full effect to the same.

**4.—Same—Charge of Court—Provoking Difficulty.**

Where upon trial for murder the defendant, according to his own testimony, left the deceased after the first altercation, returned armed and applied to the deceased opprobrious epithets, etc., the court correctly charged on provoking the difficulty.

**5.—Same—Charge of Court—Right of Going Armed—Explanation.**

Where upon trial for murder the evidence showed that the defendant returned to the scene of the first difficulty armed with a pistol to call the deceased a son-of-a-bitch, etc., there was no error in the court's failure to charge the jury upon defendant's right to arm himself and seek a retraction of a similar insult offered by the deceased.

**6.—Same—Charge of Court—Limiting Testimony.**

Where upon trial for murder the bill of exceptions upon appeal did not show the nature or character of the testimony with reference to the question of impeachment, which it is claimed the court should have limited in his charge, the same cannot be considered on appeal; besides the record showed that there was no impeaching testimony whatever introduced by the State except that which referred to the general reputation of defendant's accomplice witness and which was admitted without objection.

**7.—Same—Evidence—Res Gestae—Dying Declarations.**

Where upon trial for murder testimony was admitted that deceased, almost immediately after the fatal shots were fired, stated that defendant had shot him, etc., the same was res gestae and dying declarations, and there was no error.

**8.—Same—Self-Defense—Provoking Difficulty—Charge of Court.**

See opinion for charges of court on self-defense and provoking the difficulty which were properly separated and well applied to the facts of the case, and there was no error.

Appeal from the District Court of Williamson. Tried below before the Hon. V. L. Brooks.

Appeal from a conviction of murder in the second degree; penalty, seven years confinement in the penitentiary.

The opinion states the case.

*Geo. S. Walton, O. Dickens, Dan S. Chessher* and *J. F. Taulbee,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in the opinion.

RAMSEY, JUDGE.—This is the second appeal of this case. The report of the former appeal is found in the 50 Texas Crim. Rep., 454, where quite a full statement of the facts of the case will appear. There is no substantial difference between the facts as they appeared on the former appeal and as they appeared on the trial from which this appeal results. It may be stated, however, that on the first trial appellant testified in his own behalf. On this trial he did not. The State, however, offered extracts from his testimony on the first trial which contained statements believed by the prosecution, and, as we believe, to be

prejudicial to his defense. On the trial of the case from which this appeal results, which was had in the District Court of Williamson County, on August 10, 1908, the appellant was found guilty of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a period of thirty years. There are a number of questions raised in the appellant's motion for new trial and by bills of exceptions, many of which have been treated in the brief filed herein on behalf of appellant, and the most important of which we will undertake to notice and discuss.

1. The first error assigned relates to the charge of the court on murder in the second degree. The court instructed the jury, as stated, and submitted the issue of murder in the first degree, murder in the second degree, and manslaughter, together with the law of self-defense, and presented as well the doctrine of provoking the difficulty. The portion of the charge criticised is as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion, aroused without adequate cause, and not in defense of himself against an unlawful attack, real or apparent, reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill, did shoot, and thereby kill, Minos Long, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State Penitentiary for any period that you may determine and state in your verdict, provided it be for not less than five years." The correctness of this charge is assailed on many grounds, and particularly because the court failed to instruct the jury that the killing, in order to be murder in the second degree, must have been done upon malice and implied malice. Second, because the court failed to instruct the jury that an unlawful killing must be found to have been committed in order to find defendant guilty of murder in the second degree; and third, because the court instructed the jury that, if they believed, beyond a reasonable doubt, that the defendant killed the deceased in a sudden transport of passion, aroused without adequate cause, they should convict him of murder in the second degree. The use of the language challenged in the third objection to this charge has not infrequently been condemned by this court, and notably in the cases of Clark v. State, 51 Texas Crim. Rep., 519; 102 S. W. Rep., 1136; Kannmacher v. State, 51 Texas Crim. Rep., 118; 101 S. W. Rep., 238, and other later cases, but in the later case of Waters v. State, 54 Texas Crim. Rep., 322; 114 S. W. Rep., 628, this charge was held not to be reversible. In that case the earlier cases cited by appellant were substantially overruled. As to the other criticisms of this portion of the charge, it is not to be denied that the charge is not as full or as accurately expressed as is always desirable, but we believe, tested in the light of the entire charge, or considered in fairness and carefully analyzed within itself, the charge complained of is not so clearly errone-

ous as to constitute reversible error. We have frequently said, and it can not be too often repeated, that in testing the sufficiency of a charge of the court, as indeed other instruments, the whole instrument and charge must and should be considered together. The entire charge of the court on the subject of murder in the second degree is as follows:

"The next lower grade of culpable homicide to murder in the first degree is murder in the second degree. Malice is also a necessary ingredient of the offense of murder in the second; the distinguishing feature, however, so far as the element of malice is concerned, is: That in murder in the first degree malice must be proven to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing.

"Implied malice is that which the law infers from or imputes to certain acts, however suddenly done; thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; and the law does not further define murder in the second degree than to say that if the killing is shown to be unlawful, and there is nothing in the evidence on the one hand showing express malice, and on the other hand there is nothing in the evidence that will reduce the killing below the grade of murder, then the law implies malice, and the homicide is murder in the second degree.

"Every person is permitted by law to defend himself against any unlawful attack, real or apparent, reasonably threatening or reasonably appearing to him to threaten injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, real or apparent, made or appearing to him to be made, in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury. If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion, aroused without adequate cause, and not in defense of himself against an unlawful attack, real or apparent, reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill, did shoot and thereby kill Minos Long, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for any period that you may determine and state in your verdict, provided it be for not less than five years." There is no complaint in the motion that murder in the second degree was not properly defined. The jury were in terms told that in order to constitute murder in the second degree, malice must exist, and further, that implied malice was inferred,

or such as the law imputes to the act and fact of an unlawful killing. Then follows the language complained of. It is certain, if one kills another intentionally, under circumstances not amounting to murder in the first degree, or such as would reduce the grade of offense to manslaughter, and same is not in self defense, it is unlawful. It is equally certain that, under such circumstances, the law would impute malice to appellant, and that the killing would be murder in the second degree. It is always unlawful for one person to intentionally kill another, unless the act is in self-defense or under such circumstances as, in the case of legal execution, that the act would be justified in law, and in a case like the one at bar, where murder in the second degree is well and fully defined—so well, indeed, that the definition escapes criticism or complaint—it is not believed that the mere omission in a particular paragraph to require the killing to be unlawful, or upon malice, would vitiate what would be otherwise a proper charge where the facts required to be found, both as a matter of law and as a matter of fact, would make the killing unlawful and stamp it inevitably as of the grade of murder in the second degree. It is, as stated, the law, settled time out of mind, that implied malice will be presumed whenever there is an intentional killing without just cause or excuse. As was said by Judge Clark in the case of Harris v. State, 8 Texas Crim. App., 90: "A perfectly exact and satisfactory definition of that term, signifying its legal acceptation in a form at once clear and concise, has been often attempted, but with no very satisfactory permanent result. The differing minds of different courts have employed different terms and language in an attempt to convey substantially the same meaning; and while a general similarity is apparent in all the definitions, the legal mind has not yet crystalized the substance of the term into a terse sentence readily comprehensible by the average juror." Again, in the same case, the same learned judge uses this language: "If malice, in all cases, must be an inference of fact to be deduced by the jury, and not in any case an implication of law to be expounded by the court, the inquiry at once arises: From what fact must this inference be deduced? Every inference legitimately arising must have a substratum of fact as a basis, and in the absence of such basis the law permits no inference. Clearly, then, the jury must infer malice from the isolated fact of killing, because we are discussing, by way of illustration, a case in which nothing else is proven." Again, in the case of Gallaher v. State, 28 Texas Crim. App., p. 247, the court uses this language: "Malice in its legal sense denotes a wrongful act done intentionally, without just cause or excuse." We think the charge, while not as clearly expressed as might be desired, is subject only to the construction that would imply and require a finding that the killing was unlawful, and a state of case in which the law of necessity would imply malice, and that the use of the words in said charge, "with intent to kill," relates back and covers any defect in the previous portion of the charge, and that the conclusion logically and necessarily follows that such killing was both intentional and unlawful.

See Brittain v. State, 36 Texas Crim. Rep., 406; Neyland v. State, 13 Texas Crim. App., 536.

2. Complaint is made of the charge of the court on the subject of accomplice. The particular paragraph of the charge assailed is as follows: "A conviction can not be had upon the testimony of an accomplice, even if such testimony be inculpatory, and be believed by the jury to be true, unless such testimony be corroborated by other evidence tending to connect the defendant with the offense committed (if any), and the corroboration (if any), is not sufficient if it merely shows the commission of the offense.

"An accomplice, as the word is here used, means anyone connected with the crime committed (if any), either as principal offender or an accomplice, or an accessory, or otherwise. It includes all persons who are connected with the crime (if any) by unlawful act, or omission on his part, transpiring either before, at the time, or after the commission of the offense (if any).

"If, therefore, you find from the evidence that the witness, Harvey Carroll, was an accomplice, or if you have a reasonable doubt as to whether he was or not, as that term is defined in the foregoing instructions, and if you further find that the evidence of said witness is true, and that same shows the defendant's guilt of the charge contained in the indictment, you nevertheless, even if you should so believe, can not find the defendant guilty upon said testimony, unless you are satisfied that same has been corroborated by other evidence tending to connect the defendant with the offense committed (if any), and the corroboration (if any) is not sufficient if it merely shows the commission of the offense (if any).

"In this connection you are further instructed that the foregoing rule of law requiring accomplice testimony to be corroborated, as above stated, in order to warrant a conviction, has no application to testimony given by an accomplice which is exculpatory; if, therefore, you find that the testimony of said witness Carroll, or that any part of said testimony, shows, or tends in any degree to show, that the defendant was justified in shooting Minos Long (if he did so), or that said testimony, or any part of same, excuses, or tends to excuse, or mitigates, or tends to mitigate the offense (if any), you are under no duty to require the corroboration of such exculpatory testimony (if any) before allowing full effect to same, even if you find from the evidence, and beyond a reasonable doubt, that said witness was an accomplice to the offense (if any) of the killing of Minos Long." This charge is complained of, first, because there was no testimony adduced showing, or tending to show, that Carroll was an accomplice; second, because Carroll was a witness for the defendant, and the rule of evidence as to the testimony of accomplices does not apply to witnesses for defendant; third, because it was calculated to confuse the jury, as it was impossible for the jury to distinguish the exculpatory from the inculpatory evidence of said witness, and required of the jury an impossible duty; and fourth, because said

charge was calculated to prejudice said witness before the jury, and cause the jury to believe that said witness was, in the opinion of the court, a *particeps criminis* to said killing. The evidence showed such relation of the witness Carroll to the facts preceding the killing and leading up to the homicide as might have well justified the jury in believing that he was aiding and encouraging appellant in the assault and attack upon deceased. It is true that Carroll was a witness for the appellant. On his cross-examination, and by way of impeachment, certain statements were attributed to him, which, if standing alone and in the absence of such an instruction as that given by the court might have been appropriated by the jury as the basis of an adverse verdict. The purpose, as evidently the effect of this charge, was to advise and instruct the jury that, if they believed Carroll occupied the relation of accomplice to the homicide, that they could not appropriate or use his testimony as a basis of conviction, even though it was true, unless corroborated by the testimony of other witnesses. The last clause of the court's charge, which in substance instructed the jury that the rule requiring accomplice's testimony to be corroborated has no application to testimony given by an accomplice which is exculpatory, then thus instructs them: "If, therefore, you find that the testimony of said witness Carroll, or that any part of his testimony, shows, or tends in any degree to show, that the defendant was justified in shooting Minos Long (if he did so), or that said testimony, or any part of same, excuses, or tends to excuse, or mitigate, or tends to mitigate the offense (if any), you are under no duty to require the corroboration of such exculpatory testimony (if any) before allowing full effect to same, even if you find from the evidence, and beyond a reasonable doubt, that said witness was an accomplice to the offense (if any) of the killing of Minos Long." It is not certain but that this instruction was more favorable to appellant than he was entitled to receive. There is nothing in the complaint that the jury would be confused by this instruction, or that it was impossible for them to distinguish between the exculpatory and inculpatory evidence of this witness. The clear intent and effect of it was to advise the jury that if the witness was an accomplice, so far as his testimony was adverse to appellant's interest, and effected, or might effect, the basis of a conviction, it must be corroborated, but insofar as it was favorable to appellant, and tended to show justification, excuse or mitigation of the offense alleged, that no corroboration was required.

3. The next complaint relates to the charge of the court on the subject of provoking a difficulty. This complaint in substance is to the effect that this issue was not raised by the facts, for that the appellant, under all the facts of the case, was entitled to a full and fair trial upon the law of self-defense, unembarrassed or uncomplicated with a charge on provoking a difficulty. As stated above, the facts are not essentially different from those on the former trial. In the course of his opinion on the former appeal, Judge Henderson, speaking for the court, says: "We believe that the court was fully authorized to give a charge on pro-

voking the difficulty. According to appellant's own testimony, he left the saloon to procure a weapon, and came back and applied to deceased the same opprobrious epithet which he says deceased had applied to him. This, we think, sufficiently authorized the court to charge on provoking the difficulty. See McCandless .v. State, 42 Texas Crim. Rep., 58, for character of charge to be given on this subject." The appellant does not complain that the charge of the court in respect to the issue of provoking a difficulty was in itself erroneous, but only in effect that the court was not authorized, on the facts, to charge on this issue at all. We agree with the former opinion rendered in the case, that it was clearly the duty of the court to charge on this subject, and we think that the charge is substantially unobjectionable.

4. The next complaint urged by appellant relates to the action of the court in refusing to charge the jury in substance that, if they believed that deceased had insulted appellant by calling him a son-of-a-bitch, defendant would have a right to go and arm himself, and return to deceased and seek a retraction of such insult, and if deceased attacked or attempted to attack defendant, that he, the defendant, had a perfect right of self-defense, and would not lose said right of self-defense by going and arming himself and returning for the purpose aforesaid. On the former appeal, touching appellant's right of self-defense, Judge Henderson uses the following language: "If, when appellant left the saloon, he had not formed the intent to take the life of deceased, but procured a pistol and returned to the saloon, and drew his pistol on deceased, and cursed and abused him, and deceased did not resent it, and he afterwards started to walk away, and deceased again cursed and abused him, and appellant's mind became excited, and he then formed the intent to kill deceased, and did so, then he was only guilty of murder in the second degree. And this is the only contingency, so it appears to us, wherein a charge on self-defense was required; that is, if appellant at this juncture had abandoned the difficulty and withdrawn therefrom, and deceased renewed it, and made a demonstration as if to get a weapon, and appellant believed himself thereby placed in peril of his life or serious bodily injury, he might have the right of self-defense. However, if there was no abandonment, and he came there, as he says himself, to provoke a difficulty, and if deceased resented it, that he expected to have a mortal combat with deadly weapons, he could not claim self-defense." This language is directly applicable to the facts of this case. Not only in the statement of facts, but in the very bill of exceptions contained in this record, appellant was shown by the record to have testified that he went back to the saloon to call deceased a son-of-a-bitch; that he thought deceased probably would not take it and would try to kill him; that he went and got the gun to call deceased a son-of-a-bitch, and if he started to kill him that he aimed to have something to defend himself with; that he knew it was language calculated to provoke a difficulty; that he believed that it was language which was liable to provoke a difficulty; that at the time he told him to get his

gun to give him a chance for his life; that he did not particularly want
to fight with guns when he said that he expected to fight, because he
had called him a son-of-a-bitch; that he told him, "I have got my gun,
and to get his;" he told him this because he had called him a son-of-a-
bitch, and naturally expected he would get a gun. There is so much of
this testimony that we deem it unnecessary to set it out. Clearly, under
these facts, the requested charge would have been wholly inapplicable,
and it would have been error for the court to have given it.

5. Again, complaint is made of the error of the court in refusing to
limit the testimony of the witness Carroll. The bill of exceptions evi-
dencing this complaint recites the following: "A large mass of testi-
mony was introduced in evidence showing, or tending to show, that cer-
tain witnesses had theretofore made different statements from those
made by them on the present trial, and impeaching testimony, as will
fully appear from the statement of facts in the case to which reference
is made, and which impeaching testimony and contradictions are made
a part hereof by reference to prevent repetition. And the court, in his
charge to the jury, failed to limit the use the jury could, or ought, to
make of same, and failed to tell the jury the purpose of permitting
same to be introduced. And defendant called the attention of the court,
in his motion for a new trial, to his failure to so instruct the jury, and
asked for a new trial because of said failure. Because the law requires
the court to so instruct the jury when such testimony is introduced in
evidence or the jury are at liberty to use same for all purposes, and im-
pair the defendant's rights." It will be noted that, by the terms of this
exception, the nature or character of testimony is not set out. What it
is we are at a loss to know, and in order to consider the bill at all, and
to judge and determine whether the impeachment and contradictions
are of such character as could or might have injured appellant, or
whether they were such as should have been limited by the court, would
require us to go through the voluminous statement of facts, and deter-
mine what the bill leaves open, the nature and character of the impeach-
ing testimony, and whether, in fact, it should be limited. This, we
think, under such a bill, we are not required to do; but in any event, in
view of the explanation and qualifications of the court, it is manifest
there was no error committed in the respect complained of. In ap-
proving this bill the court makes the following statement: "There was
no impeaching testimony whatever introduced by the State except the
testimony of the witness Townsend, admitted without objection that
the reputation of the witness Carroll for truth and veracity was bad.
All of the testimony was to conflicting statements of witnesses, and
all evidence of an impeaching character, except as above stated, was in-
troduced by the defendant, and the defendant made no request, either
verbal or written, that such testimony be limited under such circum-
stances. The court considered that it would be more favorable to the
defendant not to limit said testimony, and same was not limited in the
charge."

240 56 TEXAS CRIMINAL REPORTS. [Austin,

6. Again, complaint is made of the testimony of several witnesses in respect to statements and declarations of the deceased which were offered as dying declarations and as part of the res gestæ. These statements were to the effect that appellant had shot him because he would not sell him a 15-cent drink of whisky on credit, and that he shot him in cold blood, and that it was hard to be shot about a drink of whisky. These conversations were shown to have occurred almost immediately after the fatal shots were fired, and, we think, come within the rule of res gestæ, and were admissible on this ground, and probably as well on the ground of their being dying declarations.

7. There are some other matters complained of in appellant's motion for new trial, as well as by bills of exceptions, but they are not matters of serious moment, nor do we believe that there was any error committed by the trial court in respect to any of them.

We have carefully examined the quite voluminous record in the light of appellant's brief, as well as aided by his oral argument, and we do not believe that there was any error committed on the trial of the case for which we would be justified in reversing it. It is, therefore, ordered that the judgment of conviction be, and the same is, hereby affirmed.

*Affirmed.*

ON REHEARING.

May 19, 1909.

RAMSEY, JUDGE.—The motion for rehearing filed herein vigorously assails the correctness of the opinion of the court in affirming the judgment of the court below. We have, on the fullest reflection, no doubt of the correctness of the matters discussed in the original opinion. The motion for rehearing, however, complains that the charge of the court on self-defense was so interwoven with the charge on provoking the difficulty as to constitute a limitation on appellant's right of self-defense, and is error, if self-defense, pure and simple, be in the case supported by ever so little testimony. This matter received our attention on the original submission, but it occurred to us that the contention had such little foundation in the record as not to require discussion. However, in view of the serious insistence of appellant, and to make the opinion complete, we will discuss the matter. In paragraph three of the court's charge this instruction was given: "Every person is permitted by law to defend himself against any unlawful attack, real or apparent, reasonably threatening or reasonably appearing to him to threaten injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, real or apparent, made, or appearing to him to be made, in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury." In the sixth paragraph of the court's charge the jury were thus instructed: "A reasonable apprehension of death, or of great

or serious bodily harm, will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe the defendant killed Minos Long, but further believe that, at the time of so doing, the deceased had made an attack on him, or that it at said time appeared to defendant that deceased had made, or was making, or was about to make an attack on him, which, from the manner and character of it, or from any or all of the existing circumstances, caused him, when viewing the situation at the time from his standpoint, to have a reasonable expectation or fear of death or serious bodily injury, and that, acting under such reasonable expectation or fear, if any such there were, the defendant killed the deceased, or if you have a reasonable doubt as to whether or not such were the facts, then you should acquit him on the grounds of self-defense." It will be noted from the quotations above that the jury were instructed that, if they found the facts which, under the law, constitute self-defense, existed, or if they have a reasonable doubt of their existence, they should acquit appellant on the ground of self-defense. Then follows a charge on the doctrine of self-defense as affected by the issue of provoking the difficulty. This portion of the court's charge is as follows: "You are further instructed, as a part of the law of this case, and as a part of the law on self-defense, that if you find from the evidence, and beyond a reasonable doubt, that the defendant, Will Puryear, sought the occasion on which Minos Long was killed (if he was killed) for the purpose of slaying the said Long (if he did so), and that said defendant, having found the said Long, then and there did some act, or used some language, or did both, as the case may be, with intent on his (defendant's) part to produce the occasion for slaying him and bring on the difficulty, and that said conduct on defendant's part (if there were such) was reasonably calculated to provoke a difficulty, and that on such account Minos Long attacked defendant, or reasonably appeared to defendant to attack him, or to be about to attack him, and that defendant then killed Minos Long in pursuance of his original design (if there was such), such killing would be murder of either of the first or second degree, according as the facts and circumstances in evidence may justify the jury in finding.

"But if the defendant provoked the difficulty that resulted in the death of deceased, and by his own wrongful act produced a necessity for taking the life of the deceased, but in doing so, if he did so, he had no intent to kill deceased, or to inflict upon him serious bodily harm, and suddenly, under the immediate influence of sudden passion arising from an adequate cause, as hereinbefore fully explained in this charge, he shot

and killed deceased, then you will find the defendant guilty of manslaughter.

"But if you do not find from the evidence and beyond a reasonable doubt the existence of the facts which would qualify the defendant's perfect right of self-defense under the law as it is given you in this paragraph of the charge, you will decide the issue of self-defense in accordance with the law on that subject contained in paragraph VI of this charge, and without reference to the law on the subject of provoking the difficulty." The eighth paragraph is as follows: "The full and perfect right of self-defense of a person who provokes a difficulty revives as soon as such person in good faith abandons such difficulty. You are therefore instructed that, even if you find from the evidence, and beyond a reasonable doubt that the defendant sought the occasion on which Minos Long was killed (if he was killed) for the purpose of slaying the said Long (if he did so), or for the purpose of provoking a difficulty, with no intention of slaying said Long, and that said defendant, having found the said Long, then and there did some act, or used some language, or did both, as the case may be, with intent on his (defendant's) part to produce the occasion and bring on the difficulty, and that said conduct on defendant's part (if there were such) was reasonably calculated to provoke, and did, in fact, provoke a difficulty, such facts would in nowise limit or abridge any right of self-defense that the defendant would otherwise have had on the occasion of the shooting; if you further find that defendant had, at the actual time of the shooting, abandoned said difficulty (if any) in good faith; or if you have reasonable doubt as to whether or not he had at said time in good faith abandoned said difficulty (if any)." We think a careful reading of the court's charge must convince the thoughtful reader that the issue of self-defense was, in the light of the entire record, submitted to the jury as fairly and as fully as it was possible to do.

The other questions of moment are discussed in the original opinion of the court, and we see no occasion to elaborate them.

The motion for rehearing is overruled.

*Overruled.*