## OSCAR CLARK v. THE STATE.

### No. 3548. *Decided May 29, 1907.*

#### 1.—Murder in Second Degree—Clothing of Deceased—Evidence.

Upon trial for murder, there was no error in admitting in evidence the clothes of deceased after they had been washed; their custody having been sufficiently accounted for, and such testimony tending to show where the shots entered deceased.

#### 2.—Same—Charge of Court—Murder in Second Degree.

Where upon trial for murder, the evidence showed that there was manslaughter in the case, and the court charged thereon, a charge of the court on murder in the second degree which omitted to charge upon malice aforethought or upon implied malice, and authorized the jury to find defendant guilty of murder in the second degree if he unlawfully killed deceased, was error.

#### 3.—Same—Manslaughter—Charge of Court.

Upon trial for murder it was error to interpolate the word "transport" in defining passion aroused by adequate cause in the court's charge on manslaughter. See opinion for suggestions to trial judges.

#### 4.—Same—Threats—Charge of Court—Statutes Construed.

Upon trial for murder, a charge of the court on threats which stated that some overt act which was calculated to induce the belief, and which did induce the belief in the mind of the accused, etc., was not error. Article 713, Penal Code, requires some act then done which manifests an intention to execute the threats so made; and it is better practice to follow the statute.

#### 5.—Same—Newly Discovered Evidence—Motion for new Trial.

Where upon motion for new trial, it was shown by the affidavits of two witness that directly after the homicide they saw a pistol on deceased, and the only evidence on trial as to this was the testimony of the defendant that the deceased had made a demonstration as if to draw a pistol, the motion should have been granted.

Appeal from the District Court of Falls. Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of murder in the second degree; penalty, eighteen years imprisonment in the penitentiary.

The opinion states the case.

*Rice & Bartlett,* for appellant.—On the question of threats: Mitchell v. State, 96 S. W. Rep., 43; 26 Cent. Dig. secs. 614–632. On question of charge of murder in second degree: Farrer v. State, 42 Texas, 275; Scott v. State, 10 Texas Crim. App., 112. On question of charge of manslaughter: Cochran v. State, 28 Texas Crim. App., 422; Kannamacher v. State, 101 S. W. Rep., 242. On question of newly discovered evidence: Fisher v. State, 30 Texas Crim. App., 502.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at eighteen years confinement in the penitentiary; and prosecutes this appeal.

A summary of the facts shows that appellant and deceased were negroes, and lived in the town of Rosebud. Appellant was a brother-in-law of deceased, having married his sister, and occupied a house over which deceased had control, which was situated a short distance from where deceased lived. On the night preceding the homicide appellant was drinking, and went to the house, where deceased's mother lived, which was also occupied by deceased, after his wife, and compelled her to go home with him, over the protest of deceased; an altercation ensued between appellant, and deceased, Alonzo Porter, and Lige Porter, deceased's brother, in regard to this, in which deceased got the worst of the difficulty, being knocked down, and received a black eye. There is testimony to the effect that deceased required appellant to move out of the house he was occupying, and told him if he did not move out he would kill him. There is also evidence to the effect that deceased repeated this threat on the next morning, both to appellant's wife, and to appellant, but on separate occasions. According to appellant's testimony, after this threat, he bought him a pistol and loaded it to protect himself while he was seeking a house to move into. At the time of the homicide the deceased was in a saloon in the town of Rosebud with a number of other parties, and appellant came into said saloon; according to the State's theory, without any demonstration on the part of deceased, he immediately began shooting him. According to the testimony some five shots were fired, three of which took effect on deceased, and one or two of these being mortal, which caused his death almost immediately. According to appellant's theory, he testified that when he went in the saloon, not expecting to find deceased there, deceased made a demonstration, throwing his hand to his breast. Appellant says he thought deceased was going for his pistol; that he got his before deceased did, and fired three shots at him; that the first shot hit him in the breast in front, and then deceased turned a little and threw his hand to his side to get his pistol, and at this time one of his companions Robert Yelder, struck appellant, and when he did, this caused appellant's second shot to miss deceased, and Horace Foster, who was standing by Alonzo Porter (deceased), was the man who got it; that then he and Robert Yelder went to fighting, and Yelder struck appellant three or four licks, which knocked him off the gallery out in the street. Appellant said he did not know who knocked him off the gallery, but he knew he got a lick on the head; that the scar was there yet; that the lick give him pain, and that it hurt him, and caused him to bleed. Appellant says he fired three shots as fast as he could, because he was afraid deceased was going to get his pistol. This is a subtantial statement of the case.

Appellant claims the court committed an error in permitting the State to introduce evidence of the under-shirt and coat claimed to have been worn by deceased at the time of the homicide; the ground stated is, that these clothes had been washed, and their custody was not

shown to have been accounted for since the homicide. We do not believe this exception is well taken. The clothes had been washed, but we think their custody had been sufficiently accounted for, and it was competent for the State to use them in connection with other testimony as tending to show where the shots entered deceased.

The court charged on murder in the first degree, murder in the second degree, manslaughter and self-defense. Appellant excepted to the court's attempted application of the law of murder in the second degree to the facts of the case, his contention being that the court in said charge authorized the jury to find that an unlawful killing would be murder in the second degree. The charge objected to is as follows: The court first defined murder in the first degree, then applied the law to the facts, as to that offense, and then defined murder on implied malice, and followed this with a charge stating the principle of self-defense, and followed this with what is assumed to be the court's charge applying the law of murder in the second degree to the facts of the case, as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant, in the County of Falls and State of Texas, on the 18th day of December, 1906, as alleged, with a deadly weapon, did unlawfully shoot and thereby killed Alonzo Porter, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment, etc." It will be seen from this charge that the court nowhere tells the jury that the killing must be upon malice aforethought, or upon implied malice aforethought as theretofore defined; but as presented, it would, as contended for by appellant, authorize the jury to find appellant guilty of murder in the second degree, if he unlawfully shot and killed deceased, which might be, as insisted on by appellant, equally applicable to manslaughter; that is, an unlawful killing with a deadly weapon might be murder in the second degree or it might be manslaughter. The State, however, in this connection, suggests there was no manslaughter in the case, and this charge might not be error. We may concede that, but it appears the court believed that manslaughter was in the case, and so charged it. Aside from the court's view of this question, it occurs to us that manslaughter was in the case. Appellant, in his testimony, of course, claimed self-defense. The jury, however, found against him on this issue. While appellant's testimony directly raised the question of self-defense, yet it also presents another phase on which the jury might have believed that although appellant was not justified from what had transpired before between him and deceased, the sudden meeting with him on the occasion, and his demonstration might have excited passion in appellant's mind to such an extent as to have rendered him incapable of cool reflection, and although he may not have been justified in shooting when he did, he might be guilty of no more than manslaughter. We think that the court was authorized to give a charge on manslaughter, and there being manslaughter in the case, the charge above complained of was error. Furthermore, appellant complains

of the court's charge on manslaughter. After defining manslaughter, in general terms, according to the statute, in applying the law to the facts of the case, the court required the jury to believe before they could convict appellant of manslaughter that the killing occurred in a sudden transport of passion aroused by adequate cause, etc., the contention here being that the court had no right to interpolate the word "transport" in that connection, inasmuch as the statute does not so define manslaugher, and because the word "transport" intensifies the passion and indicates that appellant must be possessed of a fury of passion before the offense can be reduced to manslaughter. This was also error. See Kannmacher v. State, 101 S. W. Rep., 242, and authorities there cited. Both character of errors above pointed out have been repeatedly called to the attention of trial judges, and it does seem that a little care would prevent the reversal of cases upon such palpable misdirections. The courts should not forget that our Constitution guarantees to every person accused of crime a fair and impartial jury trial, and it is simply the duty of the court to afford the jury the rules of law applicable to the case being tried. However guilty a defendant may be, or whatever a court may believe about the testimony of the witnesses for the defendant, he is entitled to have the phase of the case presented by his evidence properly given to the jury.

Appellant also complains of the court's charge on threats, and to support his contention he refers us to Mitchell v. State, 96 S. W. Rep., 43, and he says the charge in that case, which was condemned, is similar to the charge in this case. We do not agree to this contention. Here the court did affirmatively apply the law to the facts in favor of defendant after the following manner: "So if you find from the evidence in this case, that the deceased had threatened to take the life of the defendant, and that at the time of the killing he, or any other person acting with him, if you find there was any other person so acting, committed some overt act which was calculated to induce the belief and which did induce the belief in the mind of the accused, viewing the facts from the defendant's standpoint at the time that he or they were then going to execute said threats, then and there, and that acting under that belief, the defendant fired the fatal shot, then you will find the defendant not guilty." We are not prepared to say that the terms used in this charge are more onerous or more exacting than those stated in the statute. See article 713, Penal Code. Said article says, "some act then done which manifests an intention to execute the threat so made"; this charge says, "some overt act which was calculated to induce the belief, and which did induce the belief in the mind of the accused, viewing the facts from the defendant's standpoint at the time, etc." We do not believe the statute can be well improved on in this respect, and where a right is given in the language of the statute, it is generally best to follow this language and not attempt to improve on it. The jury might not have understood what an overt act meant, whereas they would know and

could pass on an act then done, which manifested an intention to execute the threat.

Appellant also urges that a new trial should be granted in this case because of newly discovered evidence; that is, during the trial appellant claimed that he thought deceased had a pistol, but the evidence did not disclose any pistol on the body of deceased after the homicide, and he has presented, in connection with motion for a new trial, the affidavits of two witnesses who swear that directly after the homicide they saw a pistol in the pocket of deceased. While appellant alone, of all the witnesses, testified to a demonstration on the part of deceased as if to draw a pistol, this evidence must have challenged the credulity of the jury. We are not prepared to say that the fact of the subsequent discovery of a pistol on the body of deceased may not have been calculated to support appellant's testimony and his theory with the jury, therefore, we believe that the motion for new trial should have been granted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*