### JOHN SMITH v. THE STATE.

No. 294. Decided January 12, 1910.

**1.—Murder—Charge of Court—Murder in the Second Degree.**

Where, upon trial for murder, the court's charge on murder in the second degree failed to instruct the jury that the killing must be unlawful and upon malice, and excluded self-defense and manslaughter, both of which issues were raised by the evidence, the same was reversible error. Following Clark v. State, 51 Texas Crim. Rep., 519.

**2.—Same—Charge of Court—Instrument or Means Used.**

Where, upon trial for murder, the evidence showed that the means used by which the homicide was committed was a deadly weapon, there was no error in the court's instruction submitting this phase of the case, such issue being raised by the evidence.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of murder in the second degree; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*A. S. Baskett,* for appellant.—Cited cases in opinion.—On the question of court's charge as to instrument used: Bell v. State, 17 Texas Crim. App., 538; Whitaker v. State, 12 Texas Crim. App., 436.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This appeal results from a conviction had in the Criminal District Court of Dallas County on January 28, 1909, in which judgment appellant was found guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for a period of fifty years.

A number of the questions presented as grounds for reversal are of a character not at all likely to occur upon another trial and we, therefore, pretermit any discussion of them. It was shown beyond doubt and, in fact, admitted that along about the 26th day of May, 1908, and during a period of high water and overflow in some portions of the city of Dallas, appellant shot and killed Will Overstreet at the residence of Lee Lambkin on or near Ross Avenue. The killing occurred at night and in consequence of high water the streets were not lighted, and it was quite dark. Just before this killing, appellant

had, with the same weapon, a shotgun, literally shot off the arm of Mrs. Maggie Carter. The testimony showed that appellant had been staying at Lambkin's house only on the day of the homicide; that he had no ill-will at all towards, and only the very slightest acquaintance with Mrs. Carter. There is slight, if any, evidence of any ill-will towards Overstreet and the evidence shows that their acquaintance was limited. Appellant was a leather worker. He is not shown to have been drinking, at least for some few days before the killing. The evidence shows that across the street were a large number of Mexicans, men and women, and strongly raises the belief that appellant was under the impression that these Mexicans were seeking his life. The testimony shows that Mrs. Carter had been away from the house a little while and on her return, in a spirit of banter, stated to her companions that she could beat them to the door and approached the door running somewhat rapidly, and almost without warning appellant fired the gun with the effect of almost entirely severing her arm from her body; that very soon thereafter a policeman, J. T. Murray, appeared and some parties directed him to the Lambkin house as the place where the first shot had been fired; that Murray and Overstreet went in the house and in the hall towards the rear, and as they went near the door of the room appellant said, "Don't open that door"; that the policeman thereupon said to Overstreet, "Open it, Will," and Overstreet opened the door and just as he did so, the appellant fired; that the gun fired just as Overstreet and Murray, the policeman, stepped in after the door was opened, appellant firing at once with the opening of the door, and that thereupon Murray arrested appellant. The appellant testified at length in his own behalf and disclaimed any animosity whatever, or any ill-will, towards either Mrs. Carter or Overstreet, and went into some details as to the basis of his alarm and apprehension of attack from the Mexicans and in support claimed that he believed at the time he fired the shot that the Mexicans were seeking his life.

1. The court charged on murder in the first degree, murder in the second degree, manslaughter, self-defense, and also instructed with reference to the law of threats and mistake of fact. The charge of the court is criticised as to all these matters practically, but is, we think, sufficient and not subject to serious attack, except that portion of same which instructs the jury with reference to the issue of murder in the second degree. This charge, we think, is fatally defective and for the error therein the case must be reversed. After defining murder in the second degree, substantially in accordance with law, the court then gives this instruction, and this is the only instruction which the court does give applying the law of murder in the second degree directly to the case: "If you believe from the evidence, beyond a reasonable doubt, that the defendant in the county of Dallas, and State of Texas, on the 26th day of May, 1908, as

alleged, with a deadly weapon, to wit: a gun did shoot and thereby kill Will Overstreet, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State Penitentiary for any period that the jury may determine and state in their verdict, provided it be not less than five years." It is urged that this charge is objectionable in many respects; that it is not even required, under this charge, that the killing should be unlawful; that the jury are not instructed therein as to whether such killing should be upon malice or upon sudden passion, and that under the terms of the same it would not be a defense that the killing was justifiable or excusable on any of the matters testified to by appellant, but that this charge absolutely nullifies the defense of mistake of fact, self-defense under a mistake of fact, and also denies to appellant the consideration of the issue of manslaughter. We think all these complaints are well taken. A charge very similar to this was condemned by this court in the case of Clarke v. State, 51 Texas Crim. Rep., 519. The charge there condemned was as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant, in the county of Falls and State of Texas, on the 18th day of December, 1906, as alleged, with a deadly weapon, did unlawfully shoot and thereby killed Alonzo Porter, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment," etc. This charge is practically a reproduction of the court's charge in the case at bar, except that under the charge here considered the jury are not even required to find that the killing was unlawful. Touching the charge given in the Clarke case, supra, the court say: "It will be seen from this charge that the court nowhere tells the jury that the killing must be upon malice aforethought, or upon implied malice aforethought as theretofore defined; but as presented, it would, as contended for by appellant, authorize the jury to find appellant guilty of murder in the second degree or it might be manslaughter." The charge in this case is clearly distinguishable from the one considered and held sufficient in Puryear v. State, 56 Texas Crim. Rep., 231, 118 S. W. Rep., 1042.

2. Complaint is also made of the charge of the court which instructs the jury that the instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. It is urged that under the facts of this case this instruction was erroneous and uncalled for; that the instrument used was beyond question a deadly weapon and such a charge gives undue prominence to the presumption arising from the character of the weapon and the manner of the killing and that it makes the presumption of criminal intent neutralize the presumption of innocence. We are not prepared to agree with this contention. The charge undoubtedly announced a correct proposition of law and under

some of the evidence we think it was proper for the court to have given this charge.

There are many issues of the case and the charge of the court covers a great many questions. This charge we have carefully examined and except in the respect noted above, find no error in same. However, for the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*