## JOHN ANDERSON v. THE STATE.

### No. 1563. ˙ Decided February 21, 1912.

**1.—Murder—Charge of Court—Relative Strength of Parties—Character of Deceased.**

Where, upon trial of murder, the evidence showed the parties to have been strangers to each other, and did not show anything with reference to their relative strength, or that defendant had any knowledge of the disposition or character of deceased, it was reversible error to submit this in the court's charge as an issue in the case. Following Hickey v. State, 45 Texas Crim. Rep., 297, and other cases.

**2.—Same—Evidence—Cocaine Fiend.**

Where, upon trial of murder, the defendant offered testimony to show that the main State witness was a cocaine fiend to such an extent that it would impair her credibility as a witness, it was reversible error not to admit the same in evidence. Following Edwards v. State, 38 Texas Crim. Rep., 386, and other cases.

**3.—Same—Charge of Court—Murder in the Second Degree.**

A charge of the court, upon the issue of murder in the second degree, which omitted malice, and authorized the jury to find defendant guilty of that degree of murder if he killed deceased with a deadly weapon, was error. Following Clark v. State, 51 Texas Crim. Rep., 519, and other cases.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Taylor* and *W. H. Stewart,* for appellant.—On question of court's charge of relative strength of parties and disposition, etc., of deceased: Lockhart ˙v. State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1024, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at twenty years confinement in the penitentiary.

1. Charging on self-defense, the court instructed the jury, among other things, as follows: "If from the evidence you believe the defendant killed the said one 'Pete,' a Mexican, but further believe that at the time of so doing the deceased had made an attack on him which, from the manner and character of it and the relative strength

of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him." Proper exception was taken to the phase of the charge which limited his right of self-defense to the relative strength of the parties, and the defendant's knowledge of the character and disposition of the deceased. The evidence is silent upon the question of the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased. In fact, the Mexican and defendant seemed to have been strangers to each other, and the evidence does not show anything in reference to their relative strength, or that appellant had any knowledge of the disposition or character of the deceased. The State's case showed a sudden and unnecessary killing. The parties seemed to have been thrown accidentally together at the house of the witness Mary Allen. The State's case shows that the defendant without provocation, except a few words, stabbed deceased with a knife. The defendant's evidence is to the effect that he was acting in self-defense from an attack made on him by one of the parties with an axe and the other with a club. Under this state of facts this charge was an unwarranted limitation on the right of self-defense. Hickey v. State, 45 Texas Crim. Rep., 297; Brady v. State, 65 S. W. Rep., 521; Richards v. State, 53 Texas Crim. Rep., 400; Blocker v. State, 55 Texas Crim. Rep., 30; Benson v. State, 51 Texas Crim. Rep., 367; Wallace v. State, 50 Texas Crim. Rep., 374. In the Benson case, supra, the judgment, in the original opinion, was affirmed, the court holding that under the peculiar facts of the case the error was not of sufficient importance to require a reversal of the judgment, but upon rehearing this part of the opinion was held to be error, and the judgment was reversed. Quoting from the Benson case, we find this language:

"We note, in disposing of these propositions of appellant, we said formerly: 'If it be conceded that the testimony suggests self-defense at all as predicated on the attack, the deceased turning, and, according to his witnesses, going in the direction of appellant being an attack,' which indicates that the court was not then impressed with the idea that self-defense was by any means strongly presented in the case. In fact, in the subsequent portion of the opinion we observed as follows: 'Giving full stress to all appellant says deceased did on that occasion, it occurs to us that the testimony suggesting self-defense, to say the most of it, is exceedingly weak.' As stated, appellant, in his motion for a rehearing challenges the court's declaration that self-defense was not a live issue in the case, and he urges even if it was in the case at all, it was the duty of the court to give an absolutely full and fair charge on the subject. Now, on appellant's first proposition, unquestionably the authorities show that where there

is no evidence of the character and disposition on the part of the deceased known to appellant, that a charge on self-defense should not embrace this phase of the case, as such a charge is calculated to be misleading, and we believe we were in error in holding that the charge in this respect was not calculated or might not have been injurious to appellant. Moreover, the facts suggesting self-defense marshaled by appellant from the record show with much more cogency than originally occurred to us that the facts of the case authorized and required a charge on this subject, and that the charge as given was not accurately predicated on the facts of the case; that is, deceased may not from appellant's standpoint have been in the very act of making an attack on him, but he was in the attitude of advancing towards him for the purpose of making an actual attack."

In this case appellant's testimony presents strongly a case of self-defense, and the evidence does not show anything with reference to the relative strength of the parties, or the character or disposition of the deceased. We, therefore, hold under the unbroken line of authorities on this question, this was an injurious limitation of appellant's right of self-defense.

2. Appellant offered evidence through a witness named Frank Miller to the effect that one of the main State witnesses, Mary Allen, was a cocaine fiend. This was excluded by the court. The colloquy between the court and counsel upon the respective sides is set out in the bill. After hearing this the court refused to permit the evidence to go before the jury, and the bill recites as follows: "The defendant proposed to show by this witness that the witness May Travis, alias Mary Allen, was addicted to the use of morphine and cocaine; that the witness, if he had been permitted to do so, would have testified that he had known the said May Travis for many years; that he had often seen her use morphine and cocaine and that he knew the extent to which she used said opiates; that he knew that she had been addicted to the habit for many years, and that he had often seen her in a morbid condition, and that the said May Travis, alias Mary Allen, was a confirmed cocaine fiend. The defendant's object in offering said testimony was for the purpose of discrediting the witness May Travis, alias Mary Allen, and that she was incapacitated to relate facts as they actually happened." Subsequently appellant offered Dr. Woods as an expert to show the effect of the habitual use of morphine and cocaine. This was also excluded. We are of opinion as the matter is presented by this record that this evidence should have gone to the jury. If upon another trial it can be shown the witness was a cocaine fiend and to such an extent that it would impair her mental and moral sensibilities, it is and would be a legitimate inquiry before the jury. It certainly would affect the credibility of the witness and the weight to be given her testimony. It has been held that the use of these drugs, if carried sufficiently far, may produce insanity and would even relieve of punishment for

acts committed which would otherwise be criminal. Edwards v. State, 38 Texas Crim. Rep., 386; Lawrence v. State, decided at present term. This doctrine was reaffirmed in Edwards v. State, 54 S. W. Rep., 590, and in Burton v. State, 46 Texas Crim. Rep., 493, and the same doctrine again announced in Otto v. State, 47 Texas Crim. Rep., 128. See also Phillips v. State, 50 Texas Crim. Rep., 481.

3. There is another matter to which we call attention though not mentioned for reversal, but which may occur upon another trial. The charge submitting the issue of murder in the second degree, for which appellant was convicted, is in the following language:

"If you believe from the evidence, beyond a reasonable doubt, that the defendant, in the county of McLennan and State of Texas, on the 20th day of October, 1910, as alleged with a deadly weapon, did stab with a knife and thereby kill one 'Pete,' a Mexican, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment," etc.

Under all the authorities this charge is held to be fatally defective. While, as before stated, it is not raised or suggested for reversal, yet attention is called to it so this error may not occur upon another trial. Clark v. State, 51 Texas Crim. Rep., 519; Best v. State, 58 Texas Crim. Rep., 327; McMillan v. State, 58 Texas Crim. Rep., 525; Smith v. State, 57 Texas Crim. Rep., 585.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Prendergast, Judge, absent.