### CHICAGO & N. W. RY. CO. et al. v. McKENNA.
### No. 9917.

Circuit Court of Appeals, Eighth Circuit.
Nov. 26, 1934.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely and Hugo J. Lutz, both of Omaha, Neb., and Samuel H. Cady and William T. Faricy, both of Chicago, Ill., on the brief), for appellants.

Wayne E. Sawtell and William C. Dorsey, both of Omaha, Neb., for appellee.

Before STONE and GARDNER, Circuit Judges, and JOYCE, District Judge.

JOYCE, District Judge.

This is an action for damages for assault and battery alleged to have been committed by appellant Barrett on appellee. Verdict and judgment in the amount of $500 were in favor of appellee and against both appellants. The appeal is based upon a failure to direct a verdict, error in the exclusion of evidence, and the giving of certain instructions and the refusal of others.

On April 25, 1931, the appellant Barrett was employed by the appellant railway company as a watchman guarding carloads of wheat. Barrett testified that he apprehended the appellee stealing some wheat from a car in the railroad yards at Omaha, Neb. Appellee was shot by Barrett while the latter was attempting his arrest. Barrett claims he shot in self-defense in repelling appellee's attack upon him with a knife. According to appellee's testimony, Barrett made a wanton and unprovoked attack upon him.

I. The attack upon the sufficiency of the evidence is not well founded. There is no question that the evidence presented a square conflict which it was the province of the jury to resolve by its verdict.

II. Barrett had a special police officer's badge from the city authorities of Omaha. The railway company asserts immunity from liability for the acts of Barrett upon the same theory as has been held to exempt municipal corporations from liability for the acts of peace officers, because of the following statutes:

"All railway companies and common carriers shall furnish protection against waste or theft of all shipments of freight in carload lots within this state, and shall employ and detail such number of watchmen as the railway commission may deem necessary to carry out the provisions of this section." Section 74-527, Compiled Statutes of Nebraska 1929.

"The Nebraska state railway commission shall have power, either on its own motion or on complaint being made, to determine whether such watchmen are needed at any particular place and the number thereof, and to render such decision and enter such order with reference thereto, and to make such orders, rules and regulations governing the duties and conduct of such watchmen, as to

the commission shall seem reasonable or necessary." Section 74-528, Compiled Statutes of Nebraska 1929.

While it is clear that section 74-527 requires railway companies to furnish protection against waste and theft of carload shipments and to employ watchmen for such purpose, the record does not disclose that the appellant railway company has brought itself within the provisions of section 74-528. No authority to hire watchmen has ever been given it by the Railway Commission of Nebraska, or has other action been taken by the Railway Commission looking toward such end. In the absence of such action the general rule of liability of the master for the acts of the servant for torts committed within the scope and course of employment must apply. Kusnir v. Pressed Steel Car Co. (D. C.) 201 F. 146, and cases cited in note 10 A. L. R. 1088–1090.

The duty to protect shipments from waste or theft is upon the railway, irrespective of the statutes, the main effect of the statutes being to clothe the watchman appointed for that purpose by the railroad company with certain protective police powers which he would not otherwise possess as a mere employee of the company. We fail to see that this grant of authority to the watchman transforms in any way his relation to the company as an employee. His position is not unlike that of similarly commissioned watchmen at grade crossings or other points where the operation of the railroad may endanger the public. Obviously, such crossing watchmen are nothing but the employees of the company, although their employment is compelled by law. It could hardly be contended that a crossing watchman ceased to be an employee of the railway company in making an arrest under a law empowering such watchmen to arrest persons refusing to heed his signals. It is a common practice, for example, to appoint private watchmen who are employed exclusively by agencies or individuals to protect property and who are commissioned by local police authorities so that they may have proper authority to effectively function. It is true that they are a particular kind of police officer, but it would be strange to be told that such watchmen in the performance of the only duties they are privately employed to perform are purely public officers with no responsibilities for their acts upon their employers. The cases cited by appellants in support of their position on this point are not analogous to this case. Municipalities

have the dual capacity of sovereigns and private individuals, depending upon the act involved. In affording police and fire protection, municipalities act in their sovereign or governmental capacity and not in their private capacity. See the rule as set forth in Dillon on Municipal Corporations (5th Ed.), vol. 4, page 2879 et seq. The reason the municipality escapes liability is that, as an employer of policemen, it is acting as a sovereign or governmental unit. This cannot be true of a railway company, and we think this point must be resolved against appellants.

III. Appellants offered to show by Barrett "that he was in fear of his life and safety as a result of the assault plaintiff was making upon him with a knife and that is the reason that he shot in defense of his life and safety." This offer was denied and objections to questions along a similar line were sustained, to which exceptions were preserved. The admissibility of testimony of a party as to his intent or motive depends upon whether intent or motive is a fact permissible to be proved under the substantive law involved in the case. Wigmore on Evidence (2d Ed.) § 581, in support of this principle, initiates his discussion of the matter with the following language:

"Under the influence of some obscure suggestion, not easily traceable, the view has been often urged upon courts that a person—especially a party—should be disqualified from testifying to his own intent or motive, even where that intent or motive is material to be investigated."

The substantive law is contained in Instruction No. 6:

"You are instructed that if the defendant Barrett reasonably believed under the circumstances that he was in danger of serious bodily harm or death from the alleged attempt of plaintiff to assault him with a knife when the defendant Barrett was attempting to arrest plaintiff, then I charge you that Barrett had the right to use whatever force was necessary to defend himself against such threatened injury, and neither he nor his employer, the Railway Company, would be liable to plaintiff on account of the exercise of such right."

By this instruction the belief of Barrett was made an issue of substantive right. Exclusion of the offered testimony was error. In Noonan v. Luther, 206 N. Y. 105, 99 N. E. 178, 179, 41 L. R. A. (N. S.) 761, Ann. Cas. 1914A, 1038, an assault and battery

case where a discharged employee and her employer became engaged in a controversy during which she claimed she was assaulted without provocation, he that her behavior was so disorderly that he removed her from the hotel premises without unnecessary force, an objection was sustained to a question directed to what his intention was regarding the use of only necessary force for her removal. The New York Court of Appeals held this to be error and said:

"That the evidence was not only material, but that the question of the defendant's intent was of vital importance, not on the amount of damages alone, but on the plaintiff's right of action. * * * Therefore his intent in using force, which he conceded he used to some extent, was the first thing for him to establish, in order to justify what would otherwise have been an assault. True his testimony on the subject would not have been conclusive, but it was competent."

In Eckerd v. Weve, 85 Kan. 752, 118 P. 870, 872, 38 L. R. A. (N. S.) 516, another assault and battery case, it is said:

"While the circumstances attending the act of a party are competent evidence of the condition or state of his mind in doing it, his own testimony as to his motive, purpose, and intent is also competent."

That a state of one's mind is a fact question to be proved the same as any other fact was in Edgington v. Fitzmaurice, 29 L. R. Ch. Div. 459, stated as follows, "But the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else," cited in Rogers v. Virginia-Carolina Chemical Co. (C. C. A.) 149 F. 1.

In 10 R. C. L., § 116, page 946, the following appears:

"The rule is well settled and supported by the weight of modern authority that whenever the motive, belief, or intention of any person is a material fact to be proved under the issue on trial, it is competent to prove it by the direct testimony of such person, whether he is a party to the suit or not."

In Crawford v. United States, 212 U. S. 183, 29 S. Ct. 260, 268, 53 L. Ed. 465, 15 Ann. Cas. 392, which involved a conspiracy to defraud the United States, a phase of the case presented the question as to whether the abstraction of a certain letter involved defendant's effort at a suppression or spoliation of evidence. Defendant admit-

ted the taking and sought by another letter in reply to a demand for the return of the abstracted letter to make certain explanations. The trial court refused to allow the introduction of the reply letter or the defendant's oral explanation. In passing upon this matter the Supreme Court said:

"There may have been testimony some time during the trial from which inferences might possibly have been drawn as to the motive or intent with which those letters were taken, but, instead of testimony from which such inferences might have been drawn, the defendant was entitled to state directly on oath to the jury what that intention was, and what were the motives which induced him to take the letters."

■ IV. On cross-examination appellee admitted that he had been treated at the county hospital for morphinism. He said, "I don't remember whether it was in the year 1931 when I was taking treatments in the county hospital for the morphine habit. It seems like it was in the year 1930. I don't remember how long before that was the next time I was in there." This testimony was allowed without exception. The court denied appellants' offer to show by the superintendent of the county hospital at Omaha that the appellee was treated at the hospital for chronic morphinism between July 15 and August 1, 1930; between January 3 and February 5, 1931; April 30 and June 10, 1931; and between September 14 and October 17, 1932, and to develop by the same witness that addiction to morphine causes the disposition of the addict to become vicious and quarrelsome. These offers were excluded on the ground that there was no sufficient foundation for such testimony "until it is shown he was actually under the influence of drugs at the time of the occurrence testified to and such as to show his mind and memory or powers of observation might be affected." Not only were objections to this testimony sustained, but the court of its own motion withdrew from consideration all testimony to the effect that plaintiff had been treated as a drug addict and the jury was instructed to disregard it. We think this action of the court was error and that the defendants should have been permitted to show in cross-examination of appellee or otherwise that he was an habitual user of drugs and to develop by competent evidence the effect which continued addiction might have upon one's mental faculties, irrespective of whether he was under the immediate influence of the drug at the time of the occurrence. People

v. Webster, 139 N. Y. 73, 34 N. E. 730. We think it had a direct bearing upon his credibility and also upon the question of who may have been the aggressor in the quarrel occurring in the railroad yards. There was testimony that the appellee had a bad reputation for truthfulness and honesty, as well as for "quarrelsomeness and violence," and, if in truth he was a confirmed addict, the jury in endeavoring to make a correct appraisal of his testimony would be aided by the reception of the excluded evidence. This court in Williams v. United States, 3 F.(2d) 129, 135, 41 A. L. R. 328, said:

"We think, however, the question of the witness' credibility is not a mere collateral matter. It bears on every issue involved as to which such witness gives testimony, and that which impairs credibility is material in the highest degree."

In State v. Fong Loon, 29 Idaho, 248, 158 P. 233, 236, L. R. A. 1916F, 1198, the court said:

"We believe it will be admitted that habitual users of opium, or other like narcotics, become notorious liars. The habit of lying comes doubtless from the fact that the users of those narcotics pass the greater part of their lives in an unreal world, and thus become unable to distinguish between images and facts, between illusions and realities. In Wharton & Stille's Medical Jurisprudence (3d Ed.) § 1111, it is said that: 'Of the mental symptoms,' in the case of a morphinomaniac or other habitual users of drugs, 'the most characteristic, perhaps, are the moral perversions. The chronic morphinomaniac is often a confirmed liar. The truth is not in him. * * * There is something quite pathological in this mendacity; the lying is unblushing, inexpert, spontaneous—a sort of second nature. * * * They have been so often narcotized, and thus cut off from actualities, living in a dreamstate, that they do not seem able to recognize realities when they see them.' * * * The capacity of a witness to observe and to receive accurate impressions, to retain them in his memory, and to correctly relate them, also his power and inclination to be truthful, are all subjects which go to the credibility of a witness. * * *

"We do not mean to hold in this case that the fact that a witness is an habitual user of opium or morphine excludes his testimony, unless it is shown that he is mentally irresponsible as a result of the use of such drug when examined as a witness. But we do mean to hold that the habitual use of morphine, cocaine, and other like narcotics, which inevitably tend to impair the mind, destroy the memory and moral character of a witness may be shown for the purpose of affecting his credibility or the weight that should be given to his testimony. The distinction between showing such habit for the purpose of affecting the witness' credibility, and of excluding his testimony, is stated in 1 Rice on Evidence, p. 625, as follows:

" 'Excessive use of opium may be always shown as tending to impair the credibility of a witness, but it is not ground for the exclusion of his testimony until it satisfactorily appears that he was under its influence when examined, or when he states a certain fact to have occurred and attempts a narration of the occurrence.' "

See, also, State v. Prentice, 192 Iowa, 207, 183 N. W. 411, 15 A. L. R. 904, and Anderson v. State, 65 Tex. Cr. R. 365, 144 S. W. 281.

■ V. Appellants urge that the trial court erred in limiting the scope of their cross-examination of appellee wherein he admitted having been convicted of four felonies and had served penitentiary sentences therefor. Appellants offered to show by the records that one of these convictions was for burglary in 1903 and another in 1915 for stealing wheat from a railroad yard in Omaha. This offer was properly denied. Bosteder v. Duling, 115 Neb. 557, 213 N. W. 809, and Fire Ass'n of Philadelphia v. Weathered (C. C. A.) 62 F.(2d) 78. In 10 Ruling Case Law, §§ 107–109, page 939, with reference to a criminal proceeding, the principle is laid down that, "It is not competent to prove that he committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment."

The views herein expressed dispose of appellants' assignments of error with respect to the giving of certain instructions and the refusal of the court to give others and no further discussion thereon is necessary.

We think that for the errors indicated the judgment should be and is reversed and the case is remanded for a new trial.