[Crim. No. 3048. First Dist., Div. One. Dec. 20, 1955.]

THE PEOPLE, Respondent, v. MARGARET BELL, Appellant.

Leslie C. Gillen and Gregory S. Stout for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant Margaret Bell was charged with pandering (1 Deering's Gen. Laws, Act No. 1906; Stats. 1911, p. 9, chap. 14, now Pen. Code, § 266i) in that from July, 1951, to January, 1952, she feloniously procured Clarice Strange to act as an inmate in a house of prostitution. She was found guilty by a jury. She appeals from the judgment of conviction and from the order denying her motion for a new trial.

The sufficiency of the evidence to sustain the conviction is not challenged. The evidence, however, must be referred to in order to consider the points raised by appellant.

Clarice Strange testified that in the middle of 1951, when she was a minor, appellant employed her to act as a prostitute in the Annex Hotel in San Francisco; that she acted as a prostitute in that hotel from July, 1951, to December of that year, working for appellant; that the method of operation was that prospective clients were assigned a room in the hotel; that one of several women, including defendant, then would tell the witness the number of the room; that she would then go to that room, collect the standard price of $5.00, turn it over to one of several women, including defendant, and then go back to the client; that she was furnished a card which was punched for each act of prostitution; that each night she settled with defendant, she receiving 50 per cent of the proceeds, less 10 per cent for board, and defendant receiving the other 50 per cent; that during part of the period she worked at the hotel other girls also worked there; that she left the Annex Hotel in December, 1951. Under cross-examination the prosecuting witness testified that, from June

to December, 1951, she occasionally used marijuana, and that from August, 1951, to the end of the year she used heroin, toward the end of the period, at least once a day. During this cross-examination, the trial court consistently ruled that it would permit questions relevant as to whether the witness' power of perception or power of narration were affected by the use of the narcotic. Such questions were asked. The witness testified that she was not bewildered, intoxicated or confused by the use of the narcotic, nor did it make her feel depressed, nor did it make things look "shadowy" to her, nor did it make her forget things, nor did it make her sleepy.

The witness Joanne Shaw testified that she was employed by defendant as a prostitute at the Annex Hotel in December of 1952. This was approximately one year after Clarice Strange had left that hotel. Joanne Shaw then testified, over objection, that the procedures adopted by defendant in operation of the hotel, in keeping track of the acts of prostitution, and in the method of payment were identical with the procedures described by Clarice Strange.

One of the major controversies at the trial and on this appeal centers around the limitations imposed by the trial court on the testimony of Dr. Shaw, a licensed physician, and medical examiner for the San Francisco city prison, who was called as a witness by the defense. He testified that in the course of his professional duties at the jail he had, over the years, examined over 3,000 narcotic addicts, and that, in his opinion, continued use of heroin would cause mental deterioration. He was prevented from testifying as to the effect of heroin on addicts as to loss of efficiency, ambition, and energy, and the tendency of addicts generally to become increasingly untrustworthy and untruthful, and their tendency to lose their judgment and ability to adjust to social situations. The court, time and time again, told defense counsel that it would permit questions asking what effect heroin used in the quantities testified to by the witness Strange had on the perception, memory and mental confusion of the user. He was allowed to and did testify that a person using heroin to the extent of Miss Strange would, in his opinion, have recognizable mental and moral deterioration; that her condition would be one of confused dullness. The court consistently refused to permit the witness to answer the question as to whether this addiction would have any effect on the witness' ability to tell the truth.

The defendant did not take the stand. The jury brought in a verdict of guilty, defendant's motion for a new trial

was denied, and judgment was entered on the verdict. Defendant appeals from the judgment and from the order denying the motion for a new trial.

One of the major contentions of appellant is that the trial court committed prejudicial error in limiting Dr. Shaw's testimony, in effect, to his opinion as to what effect addiction would have on memory and perception and ability to narrate, but preventing testimony as to the effect of addiction on veracity. Appellant claims that the rule in other states is that when there is testimony a witness is an addict, experts may be asked, in order to impeach the witness, if addiction affects the veracity of addicts.

It is somewhat difficult to ascertain from the cases cited by appellant, and from those we have found, just what are the limits on expert testimony as to the effect of addiction. The cases are collected in a note by William G. Hale in 16 Southern California Law Review 333. From the cases there cited, it appears that many of the authorities hold that evidence of drug addiction of a witness is admissible either on cross-examination or by way of impeachment through an expert to show that the powers of perception, memory and narration of the witness have been impaired. The trial court allowed such testimony in the instant case. The note also collects a series of cases holding that evidence of addiction should be excluded entirely, for the reason that such examination tends to develop a purely collateral matter.

The cases are divided on the question as to whether such evidence is admissible to impeach the witness' veracity. Some cases permit such evidence. (*State* v. *Fong Loon*, 29 Idaho 248 [158 P. 233, L.R.A. 1916F 1198]; *State* v. *Concannon*. 25 Wash. 327 [65 P. 534]; *Effinger* v. *Effinger*, 48 Nev. 205 [239 P. 801]; *Lankford* v. *Tombari*, 35 Wn.2d 412 [213 P.2d 627, 19 A.L.R.2d 462]; *Anderson* v. *State*, 65 Tex.Crim. 365 [144 S.W. 281].) Other cases hold that such evidence is inadmissible. (*Kelly* v. *Maryland Casualty Co.*, (Dist. Ct., Va.) 45 F.2d 782; (Circuit Court decision—45 F.2d 788) *Weaver* v. *United States*, 111 F.2d 603; *State* v. *Robinson*, 12 Wash. 491 [41 P. 884].)

In this state, whatever the rule may be in other states, the problem is partially, at least, covered by statute.

Section 2051 of the Code of Civil Procedure provides that a witness may be impeached by "contradictory evidence or by evidence that his general reputation for truth, honesty or integrity is bad," or by evidence of conviction of a felony.

Section 2052 provides that a witness may be impeached by evidence of prior inconsistent statements. The evidence here involved does not, of course, fall into any of the classes there enumerated. The courts have frequently held that this statutory enumeration is exclusive of other methods of impeachment. (*People* v. *Sprado,* 72 Cal.App. 582 [237 P. 1087]; *People* v. *Holman,* 72 Cal.App.2d 75 [164 P.2d 297]; *People* v. *Harrison,* 18 Cal.App. 288 [123 P. 200]; *People* v. *Harlan,* 133 Cal. 16 [65 P. 9]; *People* v. *Mackey,* 58 Cal.App. 123 [208 P. 135].) ▆ However, California has recognized that there is at least one exception, and that is that a witness may be impeached on cross-examination, in addition to the enumerated methods, by evidence that he is affected by mental disease or mental derangement that affects his powers of perception, memory or narration. (*People* v. *Champion,* 193 Cal. 441 [225 P. 278]; *Ah Tong* v. *Earle Fruit Co.,* 112 Cal. 679 [45 P. 7]; *People* v. *La Rue,* 62 Cal.App. 276 [216 P. 627].) In *People* v. *Dye,* 81 Cal.App.2d 952, at page 963 [185 P.2d 624], the limitations on this exception are stated as follows: "As for the mental condition of the witness the court said in *People* v. *Champion,* 193 Cal. 441, 448 [225 P. 278] . . . : 'A witness not affected by mental disease or mental derangement may be impeached only in the manner and for the reasons provided in sections 2051 and 2052 of the Code of Civil Procedure. . . .' . . . Appellant argues that the jury had a right to consider the mental condition of Hernandez, *which is doubtless true . . . But it does not follow that appellant was entitled to produce a witness to testify as to his opinion that the boy was mentally deficient and emotionally unstable. As said in People* v. *Champion, supra, this must be developed by cross-examination."* (Italics added.)

▆ Thus, even if addiction does cause a general predilection towards untruthfulness (a fact not supported by substantial medical authority — see 16 So.Cal.L.Rev. 333, 334), the witness could be impeached in this respect in this state only on cross-examination, and not by the production of other witnesses, experts or otherwise. It follows that the restrictions placed on the examination of Dr. Shaw by the trial court were proper.

▆ Appellant next complains of the admission of Joanne Shaw's testimony, the acts testified to by her having occurred about a year after Clarice Strange had left defendant's employ. It is contended that such evidence of another crime

is not admissible under the common plan, scheme, or design exception.

Joanne Shaw testified to many incidents of her employment which were identical to those testified to by Clarice Strange, for whose procuring the defendant was on trial. She testified identically as to the nature of the Annex Hotel, the type of clientele, the amount of the charge, the method of assignment to rooms, the method of bookkeeping by means of punched cards, the amount received by each girl for each act of prostitution, the amount received by defendant, and the relationship defendant bore to the girls working in the hotel. Such testimony clearly tended to show a common plan, pattern, scheme, design, or project on the part of defendant to procure prostitutes to work at the Annex Hotel. This was the precise holding of this court in *People* v. *Quock Wong,* 128 Cal.App.2d 552 [275 P.2d 778]. The application of this exception is not dependent upon whether the "other offense" occurred before or after the offense for which the defendant is on trial. The test is whether it is a reasonable inference that the two offenses were part of a common plan or scheme. (*People* v. *Cassandras,* 83 Cal.App.2d 272 [188 P.2d 546].) The two acts here involved were not so widely separated in time so as to rebut this inference. The evidence was admissible.

The appellant next contends that the prosecuting attorney was guilty of prejudicial misconduct in giving his opinion as to the guilt of appellant. During the cross-examination of Joanne Shaw, during an argument between counsel, the prosecuting attorney referred to the witness' testimony as being the "truth." Upon request, the jury was admonished to disregard this characterization of the witness' testimony.

A more serious incident occurred during the argument to the jury. The prosecutor stated: "You don't go around in this community or any other community accusing people offhandedly of being keepers of houses of prostitution; it just isn't done.

"And if there is any feeling of protest to the fact that this possibly could have been an unjust accusation and a false charge, why wasn't there some evidence that that had been suggested to Chief Gaffey or the Chief of Inspectors or the Judge of this Court or the District Attorney or the Presiding Judge?

"Are you going to infer that innocent people are to be subjected to the whim of any type of prosecution?

"Are you going to infer that the two young girls, one of whom was 16 when she worked there, the other hardly more than 17, would be permitted to be in Juvenile Hall and come out and take the witness stand and testify to certain things, if on checking the records, the veracity of those girls, this Court or its officers had found it otherwise?

"That is an absurdity." The defense, at the time, made no objection to these remarks.

In spite of the fact that this type of argument has been frequently condemned by the courts (*People* v. *Adams,* 92 Cal.App. 6 [267 P. 906]; *People* v. *Podwys,* 6 Cal.App.2d 71 [44 P.2d 377]; *People* v. *Edgar,* 34 Cal.App. 459 [167 P. 891]; *People* v. *Hidalgo,* 78 Cal.App.2d 926 [179 P.2d 102]; *People* v. *Kirkes,* 39 Cal.2d 719 [249 P.2d 1]; *People* v. *Teixeira,* 136 Cal.App.2d 136 [288 P.2d 535]), some prosecutors continue to indulge in it. ■ There can be no doubt but that the remarks can be construed and were intended to be construed to mean that the prosecuting attorney had personal knowledge of the guilt of appellant and had possession of facts not presented to the jury. As such, the making of these remarks was clearly error. The error, however, is not *per se* prejudicial. Each case, under article VI, section 4½ of the Constitution, must be determined on its own facts. The trial judge denied the motion for a new trial. Thus, he determined the remarks were not prejudicial. This is entitled to some weight. (*People* v. *Sarazzawski,* 27 Cal.2d 7 [161 P.2d 934].) Moreover, the evidence in the instant case overwhelmingly supports the finding of guilt. Under such circumstances it is not reasonable to believe that the error affected the verdict.

■ Appellant objects to the failure of the trial court to give, although requested to do so, the cautionary instruction that in such a case the testimony of the prosecuting witness should be viewed with caution. In *People* v. *Quock Wong,* 128 Cal.App.2d 552 [275 P.2d 778], this court held that in this type of case this instruction should be given. But in that case, which was very similar in its facts to the instant one, we also held (p. 558): "The failure to give the classic precautionary instruction was error but not necessarily prejudicial error. Here, there are no inconsistencies in the prosecuting witness' testimony, nor is that testimony inherently improbable. It is strengthened, if not corroborated in the strict sense of the latter term, by the evidence of similar conduct and methods of operation by the defendant in other instances at the same place, coupled with the evidence of

the reputation of the hotel as a house of prostitution or place where prostitution is encouraged or allowed. [Reputation of the Annex Hotel, however, in our case was not shown.] These are factors which our courts have considered significant when concluding that failure to give the cautionary instruction was not prejudicial. [Citations.]"

What was said in that case is equally applicable to the instant one. The error was not prejudicial.

■ Only one other point raised by appellant need be considered. After the motion for a new trial had been denied, and after the notice of appeal had been filed, appellant filed a "Supplemental Request for Additional Record on Appeal," attempting to have included in the transcript on appeal certain portions of the probation proceedings, contending that in such proceedings Joanne Shaw had been impeached. The trial court properly denied the request. Defendant has not appealed from the order denying the request, so that the propriety of the order of denial is not properly before us. (*People* v. *McCoy*, 58 Cal.App. 534 [208 P. 1016]; *People* v. *Lewis*, 105 Cal.App.2d 208 [233 P.2d 30].)

■ The proper way to bring up evidence of perjury of a witness is on motion for new trial (*People* v. *MacArthur*, 125 Cal.App.2d 212 [270 P.2d 37]), or, in a proper case, on habeas corpus. ■ Here the alleged impeaching conversation occurred on June 1st. Judgment was not entered until June 18th. No excuse for not urging it on the motion for a new trial is offered.

The other claimed errors are so unsubstantial as not to require comment.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 4, 1956.