Desmond, J. (dissenting).
Since the principal and indispensable prosecution Avitness was shown at the trial to have been for years addicted to the narcotic drug heroin, it was grave error for the trial court to refuse to permit defendant’s qualified medical expert witness to testify as to the effect of such addiction on mental and moral qualities related to testimonial reliability.
Before discussing the law point, we will first dispose of the suggestion that the point was not properly raised at the trial by appropriate questions. Actually, defense counsel went to great lengths and used every possible approach and every form of Avords in a vain effort to convince the court of the admissibility of the physician’s opinion. The prosecution’s objections Avere sustained every time. Defendant’s attorney told the court: “I want him to give us a medical opinion as to the characteristics of a person who is addicted to heroin as a mainliner.” (A “mainliner” is one who like the witness Giles injects the drug hypodermically.) Again, the defense stated to the court: “ I submit I have a right to show this Jury by medical proof that a person such as Giles who is addicted to heroin, because of his condition is not worthy of belief.” His *30 questions, all ruled out, included this one: ‘ ‘ Doctor, would you tell us, if you can, please, what changes in personality occur in a person addicted to heroin? ” Again, he asked the witness to state the “ characteristics of a person addicted to drugs ’ ’ and asked him for a ‘ ‘ medical opinion as to whether or not a person addicted to [drugs] is — as a mainliner — can testify to facts in a normal manner Counsel carefully explained to the court that he was not asking for testimony as to whether such a person as Giles could tell the truth but ‘ ‘ on the characteristics of a person addicted to drugs The trial court would allow no investigation at all of this subject or any part of it.
The general rule, based on justice, logic and common sense, is ‘ ‘ that anything having a legitimate tendency to throw light-on the accuracy, truthfulness and sincerity of a witness ’ ’ should be accepted in evidence (98 C. J. S., Witnesses, §§ 460, 470; see People v. Webster, 139 N. Y. 73, 86; Quinlan v. City of Utica, 11 Hun 217, 219, affd. 74 N. Y. 603; Williams v. United States, 3 F. 2d 129; Model Code of Evidence, rule 106). How can it be doubted that the opinion sought to be elicited here might cast such light if accepted by the jury? Our own court, in People v. Webster (139 N. Y. 73, 87, supra), referred to the ‘ ‘ well-known properties ” of a narcotic to ‘1 induce mental confusion ”. In Webster, our court, referring this time to a defense witness in a criminal case, ruled (p. 87) that “ the People were entitled to give independent proof of the extent to which this habit had control of her ”. Citing our Webster decision, the Supreme Court in Wilson v. United States (232 U. S. 563, 567, 568) said as to a witness that the fact and extent of addiction ‘ ‘ had a material bearing upon her reliability as a witness.” In the present case the fact had been established and the defense wished to take the next step and show the jury the relation of that fact to credibility. Jurors are not necessarily familiar with such matters and the fact of addiction might be meaningless to them unless the impairment therefrom was described to them by one who knew the effects of heroin injections (see Weaver v. United States, 111 F. 2d 603; Gordon v. Gilmore, 141 Ga. 347, 348).
In Anderson v. State (65 Tex. Cr. Rep. 365, 367) the court said that if it could be shown that ‘ ‘ the witness was a cocaine fiend and to such an extent that it would impair her mental *31 and moral sensibilities ” that would be a legitimate inquiry for the jury. Other authorities holding or indicating the admissibility of expert evidence such as was here rejected are Vamvas v. United States (13 F. 2d 347); Chicago & N. W. By. Co. v. McKenna (74 F. 2d 155); State v. Gleim (17 Mont. 17); State v. Prentice (192 Iowa 207); Effinger v. Effinger (48 Nev. 205); Beland v. State (86 Tex. Cr. App. 285); State v. Concannon (25 Wash. 327); State v. Schuman (89 Wash. 9); State v. Smith (103 Wash. 267); Lankford v. Tombari (35 Wn. [2d] 412); and see People v. Bell (138 Cal. App. 2d 7) which limited such opinion testimony to a showing that the witness’ mental powers were impaired. Kelly v. Maryland Cas. Co. (45 F. 2d 782) is sometimes cited as an authority the other way but the Circuit Court of Appeals affirmed on a different point and did not pass on our question (see 45 F. 2d 788).
There is no New York case directly in point. The leading American case is State v. Fong Loon (29 Idaho 248, 258). The Idaho court thus explained its use of such opinion evidence: “We believe it will be admitted that habitual users of opium, or other like narcotics, become notorious liars. The habit of lying comes doubtless from the fact that the users of those narcotics pass the greater part of their lives in an unreal world, and thus become unable to distinguish between images and facts, between illusions and realities.” The court referred (p. 259) to “ the use of opium or any other like narcotic, well known to distort the intellect, reduce the capacity of an individual to remember and correctly relate incidents, as well as tending to create moral perversion in him.” Subject to investigation on the trial, it was ruled, was “ his power and inclination to be truthful.” Wigmore on Evidence (3d ed., Vol. 3, § 924a, and see § 924b) speaks of pathological lying and says that expert evidence thereof should be admitted.
Two minor criticisms of this kind of proof can be disposed of quickly. Of course, the taking of such an opinion raises a collateral issue but though it “ may take a long time to try, yet, if necessary to the full development of the truth, the person charging insanity is entitled to an opportunity to prove it, if he can ’ ’ (Ellarson v. Ellarson, 198 App. Div. 103, 107, citing other New York decisions including Livingston v. Kiersted, 10 Johns. 362). We should, therefore, not follow *32 State v. King (88 Minn. 175) or Katleman v. State. (104 Neb. 62) which, relying on King, rejected proof of the unreliability of an “opium eater” as bringing in a “collateral issue”. And the party offering the proof need not show that it represents a concensus, or generally accepted view. It is enough that it is not totally irrational or obviously outside any known area of expert opinion. Such is not the situation as to drug addiction. “ The chronic morphinomaniac is often a confirmed liar. The truth is not in him, especially as to himself and his habits. There is something quite pathological in this mendacity; the lying is unblushing, inexpert, spontaneous — a sort of second nature” (Wharton & Stille’s Medical Jurisprudence, 5th ed., Vol. 1, § 1111, p. 878). A more recent authority, Dr. Victor H. Vogel, Medical Officer in Charge of the Public Health Service Hospital in Lexington, Kentucky, writes in “ Facts about Narcotics ” (p. 32): “ Forced to resort to cheating and illegal activity, addicts are notorious for the ease and frequency with which they lie.” That may not be the only view held by experts, but why should that keep it from the ears of the jurors?
I see no escape from the conclusion that this was a grave error seriously limiting the jury’s supply of pertinent and important information.
The judgment should be reversed and a new trial ordered.
Judges Dye, Froessel, Van Voorhis and Burke concur with Chief Judge Conway; Judge Desmond dissents in an opinion in which Judge Fuld concurs.
Judgment affirmed.